# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SANTONYO ANTOINE BROWN,

        Defendant-Appellant.

UNPUBLISHED
January 4, 2018

No. 334810
Wayne Circuit Court
LC No. 14-006058-01-FC

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 4 to 10 years' imprisonment for the AWIGBH conviction and two years' imprisonment for the felony-firearm conviction. The AWIGBH sentence was to run consecutive to the felony-firearm sentence. Defendant now appeals. For the reasons set forth below, we affirm.

## I. PERTINENT BACKGROUND

Sometime between the late night of June 24, 2014, and the hours just after midnight on June 25, 2014, Mike Cobb was shot while riding his bicycle towards Dutch Girl Donuts on Woodward and Brentwood in the city of Detroit. Cobb was riding towards the donut shop when he crossed paths with two young men coming from an alley behind the shop. The young men stopped to let Cobb pass. Cobb testified that he rode past them, close enough to reach out and touch them, he heard one of them say, "That's Mike!" Cobb recognized one of the individuals as defendant. Cobb had seen him around at the car wash right around the corner from the donut shop, and had been involved in an altercation with defendant regarding a prostitute at a bus stop sometime in the past. There was enough light for Cobb to see defendant because he had an unobstructed view. Shortly after riding past them, Cobb began to feel dizzy and crashed into a pole. When Cobb got up, he was still dizzy and his face was torn up. Cobb sought help. He made his way through the front door of the donut shop. A man and a woman inside the shop helped Cobb get back to his house a few blocks away. Upon arriving home, Cobb laid down on his bed and fell asleep for about two hours. When he woke up, Cobb found himself in a bloody bed, and realized for the first time that he might have been shot. Cobb got up and sought assistance from his neighbor. The neighbor called 911, and Cobb was later transported to a

-1-

hospital. Cobb was not involved in any other incidents that night besides the bicycle ride to the donut shop.

While at the hospital, the police interviewed Cobb about what happened. Cobb reported that he was shot by a young man he recognized from the car wash. Cobb also remarked that he recognized the young man from an altercation they had regarding a prostitute, and gave a physical description. The police later returned with a photo lineup and Cobb identified defendant's brother, who looked similar and had a similar build. The police also received information that the shooter was someone nicknamed "Tone," which is defendant's nickname. Defendant's brother was initially arrested, but later cleared. In the interim, the police had visited Cobb again with a second photo lineup, and Cobb identified defendant. Defendant was subsequently arrested and convicted.

At trial, defendant argued that he was not the shooter because he was across town babysitting for his brother, and additionally, an individual nicknamed "Boy" had told defendant, during a drug deal 10 minutes before defendant's arrest, that he shot a guy on a bike. Defendant also put on a witness who testified that her now-dead boyfriend was the shooter.

## II. LEGAL ANALYSIS

## A. SUFFICIENCY OF EVIDENCE

Defendant first argues that there was insufficient evidence to identify him as the shooter and to convict him for AWIGBH. We disagree.[1]

This Court evaluates a defendant's sufficiency of the evidence claim by asking whether "the evidence, viewed in a light most favorable to the [prosecution], would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). "The standard of review is differential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks citation omitted). Questions regarding the weight of the evidence and credibility of witnesses are for the jury, and this Court must not interfere with that role even when reviewing the sufficiency of the evidence. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Finally, conflicts in the evidence are "resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

We hold that the prosecution presented sufficient evidence for a rational trier of fact to conclude that defendant was the shooter and to subsequently convict him of AWIGBH. The elements of assault with the intent to do great bodily harm less than murder are the following:

---

[1] Sufficiency of the evidence claims are reviewed de novo. *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016).

"(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). Additionally, identity is an implicit element of any crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).[2]

In this case, a rational trier of fact could find that defendant intended to do grave corporeal harm to Cobb when he shot him, at close range, after identifying Cobb as he rode past.[3] Defendant's argument that there was insufficient evidence to find that defendant was the shooter lacks merit. Cobb was close enough to see defendant as he rode past defendant, had an unobstructed view of defendant, and testified that there was enough light for him to see defendant. Moreover, Cobb's attention was drawn to defendant because he recognized defendant as someone he had seen at a nearby car wash a few times, and had an altercation with him a few days earlier regarding a prostitute. Thus, not only was Cobb able to visually recognize defendant, he was also able to identify defendant by name. While there are conflicting testimonies regarding whether Cobb knew defendant's nickname and whether he provided the police with the nickname, this Court must resolve that conflict in favor of the prosecution. *Kanaan*, 278 Mich App at 619. Although Cobb initially chose defendant's brother at the first photo lineup, testimony indicated that defendant and his brother shared roughly the same height and weight, and that they looked somewhat similar to one another. Consequently, it was not unreasonable for Cobb to initially identify defendant's brother. Further, Cobb corrected any such mistake when he identified defendant at the second photo lineup. Moreover, Cobb had no difficulty identifying defendant by his features in court.

Defendant relies heavily on the fact that Cobb's physical description was not close to defendant's actual height and weight. In doing so, defendant ignores two points. First, Cobb admitted that he was not good at measurements, and more specifically, his testimony about how many inches are in a foot suggests that not much credence should be put in his estimation of height outside of general observations such as defendant being taller than Cobb. Second,

---

[2] Defendant does not challenge the sufficiency of the nonidentity elements in his statement of questions presented. Because the defendant failed to raise the sufficiency of the nonidentity elements in his statement of questions presented, this Court need not address the issue because it has not been properly presented. *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008). Even if defendant had properly raised the issue, defendant would not prevail. "An intent to harm can be inferred from defendant's conduct." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997).

[3] By extension, there is sufficient evidence to allow a trier of fact to conclude the elements of felony-firearm are met because assault with intent to do great bodily harm less than murder may serve as an underlying felony for felony-firearm and defendant committed the assault by shooting Cobb. MCL 750.227b(1) (assault with intent to commit great bodily harm is not one of the four specifically listed felonies that may not serve as an underlying felony for felony-firearm); *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999) (stating "[t]he elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.").

defendant ignores that identification does not require someone to know the suspect's weight or height. A person can be readily identified from their face. This is what happened in this case where Cobb picked defendant out from a photo lineup.

Defendant asks us to find Cobb's testimony wholly unreliable as a matter of law; however, nothing in the record warrants such a finding. Being bad at measurements and not being able to recount collateral details accurately, such as the time the shooting took place, does not make Cobb's testimony entirely unreliable. Rather, it creates questions about credibility and the weight to attach to the testimony, which are within the purview of the trier of fact. *Kanaan*, 278 Mich App at 618-619.

Taken together and viewed in the light most favorable to the prosecution, there was sufficient evidence to identify defendant as the shooter.

## B. GREAT WEIGHT OF EVIDENCE

Defendant also argues that the verdict is against the overwhelming weight of the evidence for four reasons. First, there is no direct evidence, such as blood or bullet casings, linking defendant to Cobb's shooting. Second, Cobb's testimony cannot be relied upon because, among other things, it was not wholly consistent, he had difficulty testifying precisely to certain facts, Cobb identified defendant's brother in the first photo lineup, and the description Cobb gave of defendant was significantly different from defendant's actual description. Third, defendant was babysitting at the time of the shooting,[4] and fourth, an independent witness indicated that her now-dead boyfriend may have been the shooter.[5] We reject all four arguments.[6]

---

[4] Although defendant testified that he was babysitting for his sister-in-law's child at the time of the shooting, he did not offer testimony from his sister-in-law or anyone else to confirm that claim. Similarly, although defendant claimed that someone nicknamed "Boy" had been the shooter, no evidence was presented of this individual's actual name or even his existence.

[5] This witness was effectively impeached in cross-examination based upon her failure to have come forward earlier. In addition, the jury heard recordings of two phone calls made from jail by defendant in which he could be heard attempting to influence witness testimony.

[6] In order "[t]o preserve a great-weight claim, a party must move for a new trial in the trial court." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant did not move for a new trial in the trial court, but instead moved for remand in this Court. Because defendant did not move for a new trial in the trial court, this issue is unpreserved. We review unpreserved issues of great weight of the evidence for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To satisfy the plain error test, defendant must show that an obvious or clear error occurred and that the error affected the outcome of the trial court proceedings. *Id*. at 763-764. However, reversal is only warranted when the plain error results in the conviction of an "actually innocent defendant" or when an error "seriously affects the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id*.

This Court evaluates a great weight of the evidence claim by asking whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Conflicting testimony will not ordinarily be a sufficient ground for a new trial. *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Rather, "when testimony is in direct conflict and testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Id.* at 643 (quotation marks and citation omitted). In other words, to support a new trial, the witness's testimony must "contradict[] indisputable facts or laws," or "def[y] physical realit[y]" or is "so inherently implausible that it could not be believed by a reasonable juror." *Id.* (quotation marks and citations omitted).

Defendant's arguments fall short because he is essentially complaining about how the jury resolved conflicting testimony and what it decided to credit, rather than arguing that the testimony relied upon by the jury was inherently implausible. Defendant challenged Cobb's testimony and identification, but nothing suggests that Cobb's version of events defied physical reality or was inherently implausible. Rather, the jury chose to credit Cobb's version over defendant's story that he was babysitting at the time of the shooting, and that another individual was the shooter. The jury also chose to credit Cobb's version over the witness's version that her now-dead boyfriend was the shooter. "[The] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012), citing *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). The jury also heard Cobb's varying testimony regarding collateral matters, such as the time the shooting took place, and was presented with evidence explaining why Cobb might be having some difficulty recounting precisely what happened that night, but chose to credit Cobb anyways. Nothing about the jury's conclusion is remarkable. The jury simply carried out its duty of weighing the evidence and determining credibility, and resolved the competing testimonies in favor of Cobb. This Court defers to those determinations absent extraordinary circumstances not present in this case. *Lemmon*, 456 Mich at 642-644.

Consequently, we find no plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro