*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 17, 2020

v

No. 348119
Macomb Circuit Court
LC No. 2018-000269-FC

CEDRICK DEANDRE CARR,

Defendant-Appellant.

Before: LETICA, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Defendant was convicted by a jury of four counts of first-degree criminal sexual conduct (sexual penetration with person under 13) (CSC-I), MCL 750.520b(1)(a), and sentenced by the trial court to 35 to 60 years' imprisonment for each count. Defendant raises several claims of error on appeal, most of which are without merit. We agree, however, that defendant is entitled to resentencing because the trial court imposed sentences that exceeded the mandatory minimum sentence set forth in MCL 750.520b(2)(b) without articulating any reasons for the upward departure. We therefore affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. BACKGROUND

This matter arises from allegations of sexual assault made by defendant's son, who was eight years old at the time of the assaults. In 2017, the victim lived with his mother in Indiana and had little relationship with defendant. At the victim's request, however, his mother arranged for him to visit defendant. The victim stayed with defendant in Michigan twice that summer, spending part of each visit at the home of defendant's mother on Sterling Street and the remaining time at the home of defendant's brother on Studebaker Street. After the second visit, the victim began to have difficulty controlling his bowel movements. The victim's mother repeatedly questioned him about his recent incontinence until the victim disclosed that he had been assaulted by defendant. At trial, the victim testified that defendant put his penis in the victim's anus on several occasions at each of the homes they resided at over the summer.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues on appeal that he was denied a fair trial because of the prosecutor's inflammatory remarks during his opening statement and closing argument. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object to the prosecutor's comments and, thus, did not preserve this issue for review. We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant must establish that "(1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Wiley*, 324 Mich App 130, 150-151; 919 NW2d 802 (2018) (quotation marks and citation omitted). A plain error affects substantial rights if it causes prejudice by affecting the outcome of the proceedings. *Id.* at 151. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 294 Mich App at 382. Claims of prosecutorial misconduct are reviewed on a case-by-case basis, taking into consideration not only the evidence admitted at trial, but also the theories and arguments presented by the defense. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). However, the leeway to craft persuasive arguments is not without limitation; prosecutors must "refrain from denigrating a defendant with intemperate and prejudicial remarks," *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995), or appealing "to the jury to sympathize with the victim," *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008).

The prosecutor began his opening statement by informing the jury that "[t]he facts of this case arise out of the darkest events known to man." After describing the circumstances leading to the victim's first disclosure of the assaults, the prosecutor continued:

> [W]hat he explained was a heinous, depraved evil act, an act perpetrated by the man sitting right here, his father. And on that day [the victim] had to learn something that no 8-year[-]old boy should ever have to learn, and is [sic] that is that he had been raped.

> And so when he described the physicality the event and how this was happening to him when he was visiting dad in Michigan, he learned what rape was. He learned that adult word for that adult act that happened to him.

> And so, ladies and gentlemen, the famous psychiatrist, Sigmund Freud coined the phrase or the the [sic] saying that, "I cannot think of any need in childhood as strong as the need for a father's protection." This case will illustrate to you the exact dark opposite.

As the prosecutor summarized the evidence he would present, he twice referred to defendant as a "sexual predator of the worst kind."

The prosecutor continued this theme in his closing argument, which began with the following:

> We talked in the beginning about how the control of a father is a protector above all else, and the opposite of a protector is predator. And I told you that the facts and evidence we're going to show is that this man is a predator of the worst kind. It is unimaginable what [the] 8[-]year[-]old [victim] experienced when he was behind that closed door in the bathroom of the residence where Grandma lived, and he's peering through that keyhole that he demonstrated for us with that detail, and he drew for us that we all know clearly is what a keyhole looks like. It's unimaginable what he felt like as his little heartbeat knowing that on the other side of the door was that predator who is waiting to rape his son again, the feelings that he went through. I think his words were, "Why is he doing this to me?" No 8[-]year[-]old boy should ever have to go through something like that. But today is the day for justice for [the victim].

The prosecutor referred to defendant as a predator five additional times before the case was submitted to the jury for deliberations.

Defendant contends that these portions of the prosecutor's opening statement and closing argument were impermissible because they were designed to inflame the jury's passions instead of assist in interpreting the evidence. We disagree. The prosecutor was not taking gratuitous jabs at defendant solely to make defendant look bad in the eyes of the jurors. Rather, he was explaining his theory of the case, which involved defendant's use of predatory conduct to commit the charged offenses. There was evidence that defendant tried to stay in the victim's good graces by purchasing gifts and promising more gifts in the future. The victim testified that defendant took his cellphone away, which had the effect of limiting the victim's contact with his mother. Although there was much discussion of the victim's failure to disclose what was happening to other adults, it is noteworthy that the victim had not seen defendant in at least five years and was apparently meeting defendant's family for the first time. By taking the victim's cellphone, defendant limited his ability to turn to the only caregiver with whom he had a longstanding relationship, thereby curbing the likelihood that the victim would expose defendant's repeated sexual assaults. The victim also testified that whenever he wanted to talk to adults about what defendant was doing, he felt uncomfortable doing so because defendant was nearby. In addition, the victim described defendant's habit of waiting for him outside the bathroom door and immediately assaulting him when he emerged. Defendant also stopped the victim from calling out during these assaults by covering the victim's mouth. Thus, the prosecutor's repeated use of the term predator, though potentially inflammatory, was well-grounded in evidence of predatory conduct.

Turning to the prosecutor's vivid description of the fear the victim likely felt, we acknowledge that it would be difficult for most jurors to hear the prosecutor's remarks without feeling some level of sympathy for the victim. But while the prosecutor's description was undoubtedly emotional, it was a fair summary of the victim's testimony about the times he hid from defendant in the bathroom. Emotional language is not inherently improper and is, in fact, a

powerful tool in closing arguments. *Ackerman*, 257 Mich App at 454, citing *People v Ullah*, 216 Mich App 669, 679; 550 NW2d 568 (1996). Moreover, after describing his impression of the victim's feelings, the prosecutor moved on to a less emotionally charged view of the case, focusing the jury's attention on evidence establishing each element of CSC-I and the reasons why the victim's account of what happened should be credited. The facts at issue in this case, as in many cases involving child molestation, have a natural tendency to arouse sympathy for the victim, but the prosecutor did not urge the jury to convict defendant on the basis of its sympathy.

Furthermore, the prosecutor had to overcome certain weaknesses in his case that arose as a product of the victim's delayed disclosure. The victim did not tell anybody what happened for several months and willingly returned to defendant's care after having been molested during the first visit. By the time his allegations came to light, there was no physical evidence to corroborate his claims. Given the victim's ready admission that he learned "adult" terminology like "rape" from his mother when he disclosed what happened, the prosecutor also faced concerns that the jury might believe that the victim's mother tainted his recollection or, worse, helped or encouraged him to fabricate allegations against defendant. The prosecutor correctly anticipated that the defense would seize on these factors to cast doubt over whether defendant was guilty of the charged offenses. The prosecutor therefore took great care to emphasize the victim's fear, the father-son relationship involved, and defendant's predatory conduct to help explain why the victim would have been hesitant to immediately accuse defendant of criminal sexual conduct. Considering the relationship the prosecutor's remarks bore to the evidence presented and the arguments advanced by the defense, we are not convinced that the prosecutor's remarks were plainly erroneous or impaired defendant's right to a fair trial.

Furthermore, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements[.]" *Unger*, 278 Mich App at 235. Just before the prosecutor began his opening statement, the trial court instructed the jury that opening statements only described "what the parties think the evidence is going to show," and should not be taken as evidence. In its final instructions, the trial court again reminded the jury that "[t]he lawyers' statements and arguments are not evidence." It also instructed the jury to reach its verdict only on the basis of properly admitted evidence and warned against letting sympathy or prejudice influence the verdict. Because this Court presumes that jurors follow their instructions, *id.*, there is no reason to believe that the prosecutor's remarks, though colorful, affected the outcome of the proceedings.

## III. INEFFECTIVE ASSISTANCE–FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT

Defendant next argues that he was denied the effective assistance of counsel when his attorney failed to object to the prosecutor's inflammatory remarks. We disagree.

"Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018). "Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). However, because defendant did not preserve this issue for review by moving for a new trial or evidentiary hearing before the trial court, our review is limited to mistakes apparent on the record. *Id.* at 538-539.

-4-

A defendant who claims to have been denied the effective assistance of counsel bears a heavy burden to overcome the presumption that defense counsel employed a sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To do so, the defendant must generally satisfy the two-part test announced in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Muhammad*, 326 Mich App at 63 (quotation marks and citation omitted). The defendant bears the burden of establishing the factual basis for his or her claim. *Id*.

Defendant's claim of error lacks merit for several reasons. Foremost among these reasons is that failure to raise a futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Because the prosecutor's remarks were not improper, defense counsel cannot be faulted for failing to object. In addition, our Supreme Court has recognized that there are circumstances when an attorney may strategically choose to forgo an objection to potentially improper comments in order to avoid drawing the jury's attention to the matter. *Bahoda*, 448 Mich at 287 n 54. Defendant recognizes as much, but argues that there was "no fathomable strategic reason for trial counsel not to have objected during a sidebar or otherwise out of the hearing of the jury." We disagree. Setting aside the fact that the remarks were not improper, a later objection to the prosecutor's comments would not have served any practical purpose. It would not have preserved the issue of prosecutorial misconduct for review, as only contemporaneous objections will suffice for that purpose. *Bennett*, 290 Mich App at 475. The prosecutor's opening statement was immediately preceded by a cautionary instruction that the remarks were not evidence, and defense counsel knew the jury would be similarly instructed after closing arguments. Accordingly, it was unnecessary for defense counsel to seek additional curative instructions which might draw unwanted attention to the prosecutor's comments in the same manner as an objection. See *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004) (concluding that counsel could reasonably conclude that objection would be superfluous when improper remarks would already be followed by cautionary instructions in final jury instructions). Defendant has not overcome the presumption that trial counsel exercised objectively reasonable trial strategy. *Trakhtenberg*, 493 Mich at 52.

Defendant is also unable to establish a reasonable probability of a different outcome but for defense counsel's performance. *Id*. at 51. As explained earlier, the prosecutor's remarks, though colorful and emotional, were not improper when viewed in relation to the evidence and issues presented at trial. Consequently, it is improbable that the trial court would have sustained an objection had one been made, and there is no reason to believe the jury would have reached a different verdict.

## IV. DEPARTURE SENTENCE

Defendant next argues that he is entitled to resentencing because the trial court gave no hint of its reasons for imposing sentences that far exceeded defendant's sentencing guidelines range and the statutory minimum sentence. We agree.

We review a departure sentence for reasonableness by applying an abuse of discretion standard of review. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). "A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant." *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019). The principle of proportionality requires that the trial court impose a sentence that is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.*, quoting *People v Milbourn*, 435 Mich 630, 461 NW2d 1 (1990) (quotation marks omitted). The statutory sentencing guidelines embody this principle and must be considered by the trial court. *Dixon-Bey*, 321 Mich App at 524-525. In order to facilitate appellate review, when a trial court determines that a defendant should be sentenced outside of the recommended range, it must explain why the departure sentence is more proportionate to the offense and the offender. *Lampe*, 327 Mich App at 126-127.

Defendant was assessed 32 points for prior record variables and 150 points for offense variables. These scores placed defendant in the D-VI cell of the Class A sentencing grid, which recommends a minimum sentence of 171 to 285 months' imprisonment. MCL 777.62. However, because defendant was convicted of several counts of CSC-I involving sexual penetration "by an individual 17 years of age or older against an individual less than 13 years of age," defendant was subject to a mandatory 25-year minimum sentence for each conviction. MCL 750.520b(2)(b). When a minimum sentence mandated by statute exceeds the upper limit of the defendant's guidelines range, any sentence that is longer than the statutory minimum is considered a departure sentence, and the trial court must justify the sentence imposed in the same manner as other departure sentences. *People v Payne*, 304 Mich App 667, 672-673; 850 NW2d 601 (2014).[1]

Before imposing the 35-year minimum sentences in this case, the trial court noted its obligation to impose individualized sentences by considering factors such as punishment, rehabilitation, protection of society, and deterrence of similar offenses, but made no effort to explain how these factors applied to defendant or why the 35-year minimum sentences it imposed were more proportionate than the 25-year minimum sentences mandated by MCL 750.520b(2)(b). The trial court's generic recital of factors to be considered in sentencing did not provide any meaningful rationale for this Court to review. Because the trial court failed to provide adequate reasons justifying the departure sentences imposed, defendant is entitled to resentencing. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).

## V. SUFFICIENCY OF THE EVIDENCE

---

[1] *Payne* was decided before the Supreme Court abrogated the requirement of articulating a substantial and compelling reason for imposing a departure sentence. See *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). Thus, while the *Payne* Court concluded that a departure of the sort at issue in this case must be supported by substantial and compelling reasons, *Payne*, 304 Mich App at 672-673, more recent caselaw only requires that the trial court explain why the departure sentence is proportionate to the offense and the offender, *Lampe*, 327 Mich App at 126-127.

In a Standard 4 brief, defendant also argues that there was insufficient evidence to sustain his convictions and that he was denied the effective assistance of counsel when his attorney failed to move for acquittal. We disagree.

This Court reviews claims of insufficient evidence de novo. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "We review the evidence in the light most favorable to the prosecution and determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt." *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). Given this deferential standard of review, we must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). As noted earlier, defendant failed to preserve his ineffective assistance claims by moving for a new trial or evidentiary hearing. *Head*, 323 Mich App at 538-539. Our review of that issue is, therefore, limited to mistakes apparent on the record. *Id*. at 539.

Defendant argues that there was insufficient evidence to sustain his convictions because the case came down to "the victim's testimony against the defendant with no other evidence period." Defendant's position is without merit because, as a matter of law, the victim's testimony does not have to be corroborated in prosecutions for criminal sexual conduct or assault with intent to commit criminal sexual conduct. MCL 750.520h. See also *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016) ("The victim's testimony alone can provide sufficient evidence to support a conviction."). And while the victim's testimony was undoubtedly the lynchpin of the prosecutor's case, it was not completely uncorroborated. The victim's mother testified that he developed incontinence after visiting defendant, and an expert testified that incontinence could be indicative of repeated anal penetration. Furthermore, in reviewing the sufficiency of the prosecutor's evidence, we must view issues of credibility in the light that supports the jury verdict. *Nowack*, 462 Mich at 400.

Defendant's cursory assertion that he was denied the effective assistance of counsel because his attorney failed to move for acquittal is also without merit because it is contradicted by the record. Defense counsel sought a directed verdict at the conclusion of the prosecutor's proofs, and the trial court denied the motion. Accordingly, defendant cannot establish the factual predicate for this claim of error. *Muhammad*, 326 Mich App at 63 ("[B]ecause the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim.").

## VI. INEFFECTIVE ASSISTANCE–FAILURE TO INVESTIGATE

Defendant also argues in his Standard 4 brief that he was denied the effective assistance of counsel because his attorney failed to adequately challenge the victim's testimony about peering through a keyhole in the bathroom door while hiding from defendant. We disagree.

"Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law." *Muhammad*, 326 Mich App at 63. Our review of this issue is again limited to mistakes apparent from the record because defendant did not preserve appellate review by moving for a new trial or evidentiary hearing before the trial court. *Head*, 323 Mich App at 538-539.

As explained earlier, a defendant pressing a claim of ineffective assistance of counsel must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Concerning the first requirement, "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 52 (quotation marks and citation omitted).

Defendant argues that defense counsel should have gone to the homes were the victim alleged that sexual assaults had taken place to photograph the bathroom doors, which could then be used to demonstrate that the victim was lying when he testified about peering through keyholes that did not exist. Defense counsel is entitled to a presumption that his decisions regarding what evidence to present were matters of sound trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defense counsel elicited testimony from several defense witnesses, including defendant, indicating that the bathroom doors did not have keyholes, and defendant's bare assertion that this was an inadequate method of impeachment does not overcome the presumption that defense counsel had a strategic reason for choosing to rebut the victim's testimony in this manner, as opposed to introducing photographs. Moreover, the record suggests that by the time defendant was charged and retained defense counsel, defendant's mother was no longer residing at the Sterling residence, leaving defense counsel without sure access to that location. Defense counsel could also have reasonably concluded that presenting photographs of the bathroom door at the Studebaker residence only might have an adverse effect by implying that defendant had something to hide at the Sterling residence. Given this possibility, defendant has not established that defense counsel's performance fell below an objective standard of reasonableness.

Although the prosecutor used the victim's testimony about peering through a keyhole to paint a vivid mental picture for the jury, it is important to recognize that the keyhole issue was a minor detail that was not material to the charged offenses. Even if defense counsel presented evidence that negated the victim's description of the keyhole more conclusively, the jury could still have found the victim's testimony about defendant's sexual assaults worthy of belief. When the officer in charge of the case interrogated defendant, defendant himself said that the victim was intelligent and credible. Defendant also lied during his interrogation, admitted penetrating the victim with his finger, and made other statements that could be viewed as incriminating. In addition, while awaiting trial, defendant wrote a letter to the victim's mother emphatically asking her to keep the victim away from court. The jury could have attached a negative inference of guilt to defendant's request. On this record, defendant has not established a reasonable probability of a different outcome but for defense counsel's performance.

## VII. INEFFECTIVE ASSISTANCE–DEFENDANT'S COMPETENCY

At the beginning of his Standard 4 brief, defendant presents a third question for review concerning defense counsel's failure to challenge defendant's competency to stand trial. But apart from stating this question, defendant offers no substantive argument in the body of his brief. Because defendant fails to articulate *any* argument in support of his final claim of error, we consider it abandoned. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) ("An appellant may not merely announce his position and leave it to this Court to discover and

rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."); *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) ("Failure to brief a question on appeal is tantamount to abandoning it.") (citation omitted).

We affirm defendant's convictions, but vacate his sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher