*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAY A. YENSEN,

Defendant-Appellant.

UNPUBLISHED
March 25, 2021

No. 350176
Eaton Circuit Court
LC No. 2018-020111-FC

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). The trial court sentenced defendant prison terms of 40 to 60 years for each CSC-I conviction and 10 to 15 years for each CSC-II conviction, to be served concurrently. We reverse and remand for a new trial.

## I. BACKGROUND

Defendant was convicted of sexually abusing his former girlfriend's children, VS and DW, while living with them between 2009 and 2011. Both victims were under the age of 13 at the time of the alleged abuse. According to VS, the initial abuse involved defendant rubbing her vagina area with his fingers while she was sleeping. Later, defendant began engaging in acts of digital anal penetration and then eventually anal penetration with his penis. He also placed his mouth on her vagina. DW testified that defendant forced him to put defendant's penis inside DW's mouth. This occurred on more than two occasions. According to both victims, defendant threatened to harm them if they told anyone about the abuse. The victims' mother, MW, ended her relationship with defendant in 2012.

VS first disclosed the abuse to her mother in August 2016. VS explained that she decided to tell her mother about the abuse because her mother was starting a relationship with a new boyfriend and VS was afraid this new person might also harm her. DW denied having been sexually abused when he was first interviewed by the police in 2016, but he subsequently disclosed the abuse in another interview in 2017. In October 2016, the investigating detective, Edward

Burton, referred VS for an examination by Dr. Steven Guertin, who was qualified as an expert in pediatrics and pediatric critical care and child abuse. Detective Burton accompanied VS to her appointment with Dr. Guertin and sat in on the initial medical history portion of the examination, but he did not ask any questions. At trial, Dr. Guertin related VS's statements during the examination regarding defendant's alleged abuse. Dr. Guertin also commented on VS's explanation for the delayed disclosure of defendant's sexual abuse—that her mother had a new boyfriend and VS was worried the abuse would happen again—and testified that he found this explanation significant because, in his opinion, it "verifies what she said about what happened to her in the past."

Thomas Cottrell was qualified as an expert in behaviors of victims of child sexual abuse, trauma response by child victims of sexual abuse, and perpetrator behavior. He testified that delayed disclosure of sexual abuse by children is common and occurs in stages. On cross-examination by defense counsel, he was asked about his experience with false disclosures. He stated that they do occur, and then volunteered his own statistical analysis in which he claimed that, based on his own experience, he could identify only 10 out of more than 3,000 instances when children made false disclosures.

At trial, the prosecution also presented the testimony of two witnesses, NC and TR, who testified that defendant committed uncharged sexual acts against them in approximately 1999 and 2005, respectively, when they were both minors. NC, who is defendant's cousin, testified that he was sleeping on a couch and awoke to find defendant's hands under NC's shorts and underwear. Defendant was masturbating NC's penis. TR, who is defendant's son, testified that defendant sexually assaulted him during a parenting time visit. According to TR, defendant made him remove his pants and underwear while being punished, and then defendant began rubbing TR's chest and then repeatedly touched TR's penis.

Defendant testified at trial and denied sexually abusing VS or DW. Defendant also denied masturbating NC. Defendant admitted that he may have tried to comfort TR by rubbing his back while he was being punished, but denied rubbing TR's genitals.

Defendant's first trial, in November 2018, ended in a mistrial when the jury was unable to reach a verdict. At defendant's second trial, in July 2019, a jury found defendant guilty of four counts of CSC-I and two counts of CSC-II.

## II. SUMMARY OF ARGUMENTS AND STANDARDS OF REVIEW

Defendant challenges the admissibility of Dr. Guertin's testimony concerning what VS told him during the medical examination. He argues that VS's statements were hearsay and were not admissible under MRE 803(4), the hearsay exception for statements made for the purposes of medical treatment or diagnosis. Defendant also argues that Dr. Guertin's testimony that he thought that VS's claims of abuse were "verified" was an improper comment on VS's credibility. Defendant further argues that defense counsel was ineffective for not objecting to the challenged testimony at trial. Defendant also argues that an additional expert, Thomas Cottrell, improperly testified on cross-examination that only 10 out of more than 3,000 cases under his supervision involving child sexual abuse actually involved fabricated allegations of sexual abuse. Defendant also challenges the introduction of the other-acts testimony by NC and TR, who testified that

defendant committed uncharged sexual acts against them in approximately 1999 and 2005, respectively, when they were both minors. Finally, defendant raises other challenges that we need not address in light of our resolution of the arguments enumerated above.

Defendant concedes that there was no objection to the challenged testimony at trial, and therefore, these claims are unpreserved. Accordingly, we review these claims for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To be entitled to relief under the plain-error rule, defendant must demonstrate that an error occurred; that the error was plain, meaning clear or obvious; and that the error affected his substantial rights, meaning it affected the outcome of the lower court proceedings. *Id*. at 763-764. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

Because defendant did not raise the issue of ineffective assistance of counsel in the trial court, our review of this issue "is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669-670; 821 NW2d 288 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

The trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016).

## III. EXPERT TESTIMONY

We first address defendant's challenges to the testimonies of Cottrell and Dr. Guertin.

### A. APPLICABLE LEGAL PRINCIPLES

Our Supreme Court has unambiguously held that an expert may provide expert opinion testimony that concerns an ultimate issue, and an expert may draw conclusions on the basis of a complainant's medical history and physical examination; however, experts may not offer opinions based solely on what the complainant told the expert. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). Where a doctor's physical examination yielded nothing, the doctor's assessment of "probable pediatric sexual abuse" on the basis of the child's statements constitutes impermissible bolstering of the child's credibility. *Id*. at 244-248, 260-265. This Court has more recently held that merely "possible pediatric sexual abuse" is equally impermissible, noting that our Supreme Court "has repeatedly overruled decisions permitting testimony from expert witnesses that has the effect of bolstering a child-complainant's testimony." *People v Del Cid (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 342402), slip op at pp 6, 10-11. Our Supreme Court has also clearly held that providing a statistical assessment to the effect

that children lie about abuse extremely rarely is tantamount to impermissibly vouching for a child sexual assault complainant's credibility. *Thorpe*, 504 Mich at 259-260.

Furthermore, statements made outside of court are generally hearsay and may not be admitted into evidence unless an exception to the hearsay evidence rule applies. MRE 801, MRE 802. One such exception is MRE 803(4), which applies to "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." A child complainant's statements to an examining doctor might be admissible under MRE 803(4) if they were made for purposes of actual medical treatment or advice, but statements made during the course of a strictly forensic examination not conducted for the purpose of medical treatment or advice do not fall into that exception. See *People v Shaw*, 315 Mich App 668, 674-676; 892 NW2d 15 (2016).

## B. DR. GUERTIN – HEARSAY STATEMENTS

The parties do not dispute that VS's statements to Dr. Guertin during her medical examination were hearsay. We conclude that, pursuant to *Shaw*, VS's statements to Dr. Guertin were not made for purposes of obtaining medical treatment or advice, so they are not admissible pursuant to MRE 803(4).

Although the complainant at issue in *Shaw* was not a minor, the analysis in *Shaw* focused on the reason for the examination rather than the age of the person being examined. In *Shaw*, this Court noted that the complainant did not go to Dr. Guertin for gynecological services, but rather for a forensic examination pursuant to a referral by the police. *Shaw*, 315 Mich App at 675. The complainant had no other professional relationship with Dr. Guertin, and in fact had a different treating physician. *Id*. The sexual assaults at issue in *Shaw* had occurred several years previously, "thereby minimizing the likelihood that the complainant required treatment." *Id*. Similarly, in this matter, VS did not report defendant's sexual abuse until four years after it had ceased, and VS apparently had no ongoing physical symptoms from that abuse for which she sought treatment. Rather, VS disclosed the abuse for appropriate and understandable reasons, but not because she felt a need for medical attention. VS was referred to the examination, and accompanied to the examination, by the police. Although Dr. Guertin expressed concern that VS could have sustained longer-term injury and tested her for sexually transmitted diseases, neither was the reason for the examination. We conclude that, as was the case in *Shaw*, the examination here was strictly forensic in nature, rather than medical. Consequently, any statements made by VS at the examination are not admissible under MRE 803(4).[1]

---

[1] The people argue that we should evaluate the factors enumerated in *People v Meeboer*, 439 Mich 310; 484 NW2d 621 (1992), and conclude that VS was motivated to tell the truth to Dr. Guertin. However, this argument misses the point, because in *Meeboer*, all of the children at issue were actually taken to doctors for the purpose of obtaining medical treatment shortly after they had been assaulted, and either initially told their respective doctors they had not been assaulted or were very

We also conclude that defense counsel's failure to object to VS's statements as inadmissible hearsay was objectively unreasonable, and defendant was prejudiced by counsel's error. This Court generally will not review a trial attorney's decisions with the benefit of hindsight, and counsel may have sound strategic reasons for not objecting to technically-inadmissible testimony. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999); *People v Randolph*, 502 Mich 1, 12; 917 NW2d 249 (2018). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. As this Court suggested, counsel may choose not to object to hearsay that is non-trivially inconsistent with a witness's trial testimony, in an effort to cast doubt on the witness's credibility; however, where there are no significant inconsistencies, failure to object is not strategic. *Shaw*, 315 Mich App at 676-677. As was the case in *Shaw*, there were no inconsistencies to exploit, so trial counsel's acquiescence in the testimony was objectively unreasonable.

It is a closer question whether the improper testimony was outcome-determinative. In *Thorpe* and in *Shaw*, the cases turned on essentially pure credibility contests. *Thorpe*, 504 Mich at 260, 264; *Shaw*, 315 Mich App at 677. This case is not so straightforward. For example, DW testified that he once heard defendant and VS during one of the alleged instances of abuse. However, Dr. Guertin testified about what DW disclosed regarding defendant's abuse, which was inadmissible for the same reasons discussed above. It is therefore difficult to assess what effect DW's testimony would have in the absence of the improper vouching. The prosecutor also presented other-acts evidence, but that evidence was not directly relevant to VS's credibility. We conclude that, even if this case is not purely a credibility contest, credibility was sufficiently important that counsel's failure to object undermined confidence in the outcome of the proceedings.

## C. DR. GUERTIN – BOLSTERING

Defendant argues that Dr. Guertin impermissibly bolstered VS's credibility by discussing her assessment of VS's explanation for why she waited to disclose defendant's past abuse. Dr. Guertin testified that VS's response was important because "[i]t speaks to her motive and—and her fears, and it, to some extent, in my opinion, *verifies* what she said about what happened to her in the past" (emphasis added). We conclude that the above testimony constituted impermissible bolstering.

As noted above, experts may give opinions formed on the basis of objective facts they personally discovered during an examination, even if that opinion goes to the ultimate issue in the case, but they may not offer testimony that simply bolsters the complainant's testimony. The people argue that Dr. Guertin did not say that VS's allegations were "verified" or that Dr. Guertin believed VS was telling the truth, which is technically true but misses the point. Dr. Guertin's conclusions were based solely on what VS said during the examination; the examination itself yielded no evidence. In light of our Supreme Court's binding precedent, we find no meaningful difference between saying that VS's explanation "verifies what she said about what happened"

---

young. *Meeboer*, 439 Mich at 315-316; 317-318; 319-320. In short, in *Meeboer*, the fact that the examinations were for the purpose of medical treatment was established, whereas here, the examination was not for the purpose of medical treatment.

and saying "VS's allegations were verified."  Either way, the word "verify" would be a highly significant one to the jury, and Dr. Guertin gave a statement that was effectively just her own assessment of VS's credibility, which is the sole province of the trier of fact.  Therefore, Dr. Guertin's testimony that VS's allegations of abuse were "verified" qualifies as plain error.

As discussed, this case does not present a straightforward, pure credibility contest. However, credibility remains of overwhelming importance.  Dr. Guertin's corroboration and bolstering of VS's testimony therefore occurred under circumstances very similar to the credibility contest in *Thorpe*.  Thus, *Thorpe* compels the conclusion that Dr. Guertin's testimony similarly affected defendant's substantial rights.  See *Thorpe*, 504 Mich at 262-265.

### D.  COTTRELL – RATES OF FALSE DISCLOSURE

Defendant also argues that an additional expert, Thomas Cottrell, improperly testified on cross-examination that only 10 out of more than 3,000 cases under his supervision involving child sexual abuse actually involved fabricated allegations of sexual abuse.  We agree.

In *Thorpe*, our Supreme Court found similar testimony that "that only 2% to 4% of children lie about sexual abuse" (and only under limited conditions not present in that case) to be impermissible vouching for the victim's credibility.  *Thorpe*, 504 Mich at 239-240, 259-260. Cottrell's testimony here is, if anything, more egregious: it is, in effect, a statement that in his vast experience, only an infinitesimal number of children lied.  We find this indistinguishable from our Supreme Court's observation that "one might reasonably conclude on the basis of Cottrell's testimony that there was a 0% chance [the victim] had lied about sexual abuse."  *Id*. at 259.  Our Supreme Court found such testimony to be impermissible vouching, so we are bound to the same conclusion.  See *id*.  Cottrell's remark was plain error.

Plaintiff argues that this claim of error was waived because defense counsel "opened the door" to the improper testimony.  Trial counsel did not ask Cottrell about the rate of false disclosures, but rather, "what is your experience with false disclosures?"  In response to this open-ended question, Cottrell replied,

> My experience is that it does occur.  It does occur on a very, very limited basis in my practice.  In my supervision and my own work at the YWCA, I can maybe point to 10 times over — well over 3,000 children we believed that the disclosure was false.  Very different reasons behind it, each one of them.

Counsel may have asked a risky question, but the record shows that counsel went on to cross-examine Cottrell about when such false disclosures had occurred.  Counsel obtained concessions from Cottrell that false disclosures usually entailed some benefit to the individual making the false disclosure, and that false disclosures might occur if a child does not like a parent's choice of significant other.  Cottrell also conceded that the children he dealt with had already been filtered by Child Protective Services or a similar screening process.  It appears that counsel had a sound strategic reason for asking the question and that counsel neither wished nor expected Cottrell to affirmatively volunteer statistics.  We decline to conclude that counsel invited the error.

As we have already noted, this case does not present a pure credibility contest.  Cottrell's remark was isolated, and it may have been softened by counsel's follow-up questions.  We have

some doubt that, under the circumstances, this error would warrant reversal standing alone. However, as we will discuss below, we find reversal warranted on the basis of cumulative error, including Cottrell's remark. Therefore, we decline to consider whether Cottrell's remark, by itself, affected defendant's substantial rights.

## IV. OTHER-ACTS EVIDENCE

Defendant also challenges the introduction of the other-acts testimony by NC and TR, who testified that defendant committed uncharged sexual acts against them in approximately 1999 and 2005, respectively, when they were both minors. We disagree.

Under MRE 404(b), evidence of a defendant's other conduct is generally admissible unless it is relevant only to the defendant's propensity to commit similar conduct. *People v Spaulding*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348500), slip op at p 6. However, if "a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b)," even if the evidence is pure "propensity evidence." *People v Watkins*, 491 Mich 450, 471; 818 NW2d 296 (2012) (quotation omitted). Nevertheless, such evidence remains subject to exclusion "if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ' " *Id*. at 481, quoting MRE 403.

Here, defendant is clearly charged with a sexual offense against a minor, and the other-acts evidence at issue consists of evidence that defendant committed uncharged sexual offenses against minors. Defendant does not seriously dispute that the testimony from NC and TR is admissible under MCL 768.27a. Rather, defendant argues that the evidence should have been excluded pursuant to MRE 403 because its relevance is minimal but its prejudicial effect is significant.

Evidence that is admissible under MCL 768.27a may not be excluded under MRE 403 merely because the jury could draw a propensity inference from that evidence, because the purpose of MCL 768.27a is to permit the jury to draw a propensity inference under some circumstances. *Watkins*, 491 Mich at 486-487.

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id*. at 487-488 (citation omitted).]

We do not find the testimony from NC and TR excludable under MRE 403 under the circumstances of this case.

Regarding similarity or dissimilarity, the sexual acts defendant committed against TR and NC were different from the acts he is charged with committing against VS and DW. However, all of the acts (or alleged acts) involve touching the genitals of children who were effectively under defendant's authority as a parental figure. Furthermore, VS testified that defendant's repeated assaults began with sexual touching, before eventually evolving to acts of anal digital and penile penetration. Thus, although the acts themselves differed, the contexts within which the acts took place were highly similar.

Regarding temporal proximity, we disagree that the earlier assaults were too distant in time to support a finding that they had any probative value. The assault against NC occurred in 1999, and the assault against TR occurred in 2005. The abuse of VS began in 2009, when the family moved into a duplex, when VS would have been six years old. DW testified that he was five or six years old the first time defendant forced him to engage in oral sex with defendant, and thus would have occurred in approximately 2009 or 2010. The length of time between defendant's assault of NC and the beginning of abuse against VS and DW was not so distant as to render the testimony clearly inadmissible. Although the assault against NC occurred approximately ten years before the assaults in the instant matter, the intervening assault against TR undermines defendant's argument that there is insufficient temporal proximity.

Regarding the infrequency of the other acts, NC's testimony indicates that defendant assaulted him once and may have intended to assault him a second time before NC ran away; and TR's testimony indicates that defendant assaulted him once. Thus, one of the prior acts suggests an isolated assault, and the other suggests that defendant might have intended to engage in an ongoing course of assaultive behavior but ultimately did not. Conversely, defendant assaulted two separate children over a period of time, which, given that once is far too much, does suggest some "frequency." We conclude that this factor does not strongly support admission of the testimony from NC and TR, but it is also not dispositive as to the exclusion of that testimony.

Regarding the presence of intervening acts, there are no intervening acts that would render this evidence unfairly prejudicial, nor does defendant suggest any. To the contrary, when viewed as a whole, defendant's actions toward all of the victims showed a continued series of related events.

Regarding a lack of reliability, defendant argues that neither NC's testimony nor TR's testimony were corroborated. However, lack of corroboration is not dispositive. See MCL 750.520h; see also *People v DeLeon*, 317 Mich App 714, 719, 895 N.W.2d 577 (2016). Defendant offers no reason why the testimonies of TR and NC were so inherently unreliable that they should not be assessed by the jury. Both provided reasons why they did not disclose the abuse earlier, and both were contacted by Detective Burton because family members indicated that TR and NC had information relevant to the instant cases.

Finally, regarding the need for evidence beyond testimony from defendant and VS, because there was no physical evidence of the charged sexual abuse and defendant denied any inappropriate sexual activity, there was a need for evidence beyond the testimony of VS and DW.

For these reasons, defendant has not shown that the testimony of TR and NC about defendant's earlier assaults was substantially more prejudicial than probative under MRE 403.

Thus, their testimony does not qualify as plain error. Further, because defendant has failed to demonstrate that the challenged testimony was inadmissible, we also reject defendant's related claim of ineffective assistance of counsel. Defense counsel is not required to raise a futile argument or objection. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

## V. CUMULATIVE ERROR

We have concluded that defendant's trial was infected by several errors. "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not." *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003). "To warrant reversal based on cumulative error, the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Schrauben*, 314 Mich App 181, 193; 886 NW2d 173 (2016) (quotation marks and citation omitted). In the instant case, we have concluded that defendant was prejudiced by Dr. Guertin's improper testimony relating VS's statements to him concerning defendant's alleged abuse and his conclusion that he found her accusations to have been "verified," and by Cottrell's improper testimony about the rate of false disclosures. Even if each one of these errors, standing alone, would not require reversal, we conclude that their cumulative effect operated to deny defendant a fair trial. Therefore, we reverse defendant's convictions and remand for a new trial.

## VI. DEFENDANT'S REMAINING CLAIMS

Defendant also argues that he was denied a fair trial because VS was permitted to testify with the use of a support dog, even though she was over 16 years old at the time of defendant's second trial, contrary to MCL 600.2163. Defendant also argues that his sentences of 40 to 60 years for his CSC-I convictions are unreasonable and disproportionate. In light of our decision to reverse defendant's convictions and remand for a new trial, it is unnecessary to address these issues, and we decline to do so.

Reversed and remanded for a new trial at the prosecutor's charging discretion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause