# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOE LOUIS DELEON,

        Defendant-Appellant.

FOR PUBLICATION
November 15, 2016
9:00 a.m.

No. 329031
Eaton Circuit Court
LC No. 15-020036-FC

Before: BOONSTRA, P.J., and SHAPIRO and GADOLA, JJ.

BOONSTRA, P.J.

Defendant appeals by right his convictions, following a jury trial, of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (victim under 13, defendant at least 17), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b) (victim under 13, defendant at least 17).[1] The trial court determined that defendant was a third habitual offender, MCL 769.11, and sentenced him to a 35 to 70 year term of imprisonment for the CSC-I conviction, consecutive to a 20 to 30 year term of imprisonment for the CSC-II conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant met the victim's mother in September 2006 and moved into her home, where she was residing with her three minor children, in late 2006 or early 2007. Defendant and the victim's mother eventually married.[2] The victim testified that from the time she was six or seven years old until she was 12, defendant "[r]aped" her "[m]ore than once." The victim described multiple instances of sexual abuse, marking the abuse by the location where it occurred: at her family's home on Grand Manor Drive, at defendant's apartment, during a sleepover she had with her cousins at the family's home then on Marsh Drive, in her mother's bedroom at the Marsh

---

[1] The jury acquitted defendant of another count of CSC-I.

[2] The record reflects that defendant and the victim's mother married in 2008, had a son together, and divorced in 2011, and that the victim's mother and her children maintained a relationship with defendant thereafter.

Drive home, and in a bathroom at the Marsh Drive home. At all relevant times, defendant was at least 17 years of age.

At sentencing, the trial court found defendant to be a third habitual offender. MCL 769.11. This determination was based on defendant's prior convictions in Texas for "aggravated assault with a deadly weapon" and "indecency with a child, sexual contact in the third degree," his victim at that time being his then-stepson. The prosecution, echoing the sentiments expressed by the victim's family following their description of the trauma suffered by the victim and her family, requested consecutive sentencing pursuant to MCL 750.520b(3), which allows a term of imprisonment imposed for CSC-I to be "served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

In imposing sentence, the trial court characterized defendant's repeated conduct in sexually abusing young children as "almost unbelievable and inconceivable." The court noted that defendant's conduct as alleged in this case began shortly after defendant was released from prison following a 2004 conviction for molesting his stepson in Texas. Addressing defendant, and referencing both the sexual abuse for which defendant was being sentenced in this case and the sexual abuse for which he was earlier convicted in Texas, the trial court stated, "What it appears to me, Mr. Deleon, . . . is that you're finding these women and marrying these women so you have access to the children. That's what it looks like to me. And apparently with a step-son and a step-daughter, you're an equal opportunity pervert in this matter." The trial court found defendant to be "a menace to society. And this ain't gonna be the last time if you're not stopped here today. So we'll make every effort to take care of the problem today." The trial court imposed the sentences noted and ordered consecutive sentencing.

This appeal followed. On appeal, defendant argues only that the evidence supporting his CSC-II conviction was insufficient and that his consecutive sentences violate his Sixth Amendment rights pursuant to our Supreme Court's opinion in *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502, cert den ___ US ___; 136 S Ct 590; 193 L Ed 2d 487 (2015).

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that plaintiff failed to introduce sufficient evidence of CSC-II to support his conviction. We disagree. We review de novo sufficiency of the evidence claims. *People v Osby*, 291 Mich App 412, 415; 804 NW2d 903 (2011). In doing so, we must view the evidence in the light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Alter*, 255 Mich App 194, 201-202; 659 NW2d 667 (2003). The victim's testimony alone can provide sufficient evidence in support of a conviction. *People v Brantley*, 296 Mich App 546, 551; 823 NW2d 290 (2012); see also MCL 750.520h.

Defendant was convicted of CSC-II under MCL 750.520c(2)(b), which required the jury to find that he had "engage[d] in sexual contact with" the victim who was "under 13 years of age" when he was "17 years of age or older." MCL 750.520c(1)(a) and (2)(b). "Sexual contact" means "the intentional touching of the victim's or [defendant's] intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification [or], done for a sexual purpose . . . ." MCL 750.520a(q). "Intimate parts" include a

person's "genital area, groin, inner thigh, buttock, or breast." MCL 750.520a(f). And when determining whether touching could be reasonably construed as being for a sexual purpose, the conduct should be "viewed objectively" under a " 'reasonable person' standard." *People v Piper*, 223 Mich App 642, 647, 650; 567 NW2d 483 (1997). The ages of the parties at the relevant time are not in dispute.

The victim testified to multiple instances in which defendant used his hands to make sexual contact with her intimate parts. She testified to multiple instances in which defendant used his hands and fingers to touch her "from [her] vagina to [her] butt" before penetrating her with his penis. Given this testimony, a rational jury could objectively find that defendant's touching of the victim's intimate parts with his hand or fingers was both intentional and "for the purpose of sexual arousal or gratification." MCL 750.520a(q).

The victim also testified to several other instances of sexual contact sufficient to support a CSC-II conviction.[3] She described defendant intentionally using his penis to touch her genital area at the Grand Manor home and her buttock at his apartment. She also described defendant intentionally touching either her genital area or buttock with his penis when her cousins spent the night at the Marsh Drive home. She also reported that defendant had some contact with her genital area when she was in her mother's bed at the Marsh Drive home. And she stated that defendant touched her "inner thigh" with his stomach and then touched her genital area with his penis in the bathroom at the Marsh Drive home. Any one of these contacts would also have supported a conviction for CSC-II.

Viewed in the light most favorable to the prosecution, the evidence at trial was sufficient to support defendant's CSC-II conviction. *Alter*, 255 Mich App at 201-202.

## III. CONSECUTIVE SENTENCING

Defendant also argues that the trial court violated his Sixth Amendment rights when it relied upon judicial fact-finding to impose consecutive sentencing under MCL 750.520b(3).[4] Because defendant failed to preserve this issue, our review is for plain error. *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

---

[3] Although the prosecution's closing argument focused on defendant having touched the victim with his fingers and hand before penetrating her, the trial court's instructions did not limit the jury to convicting defendant of CSC-II only upon finding that defendant had touched the victim in that manner. And the court explicitly told the jury without objection that the prosecution did not have to show that the contact occurred on a specific date and time.

[4] Defendant does not argue that the trial court erroneously determined that his convictions arose from the same transaction; rather, he argues only that the trial court made the determination using judge-found facts supposedly in violation of *Lockridge*.

"In Michigan, 'concurrent sentencing is the norm,' and a 'consecutive sentence may be imposed only if specifically authorized by statute.' " *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012), quoting *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996). The trial court imposed consecutive sentencing pursuant to MCL 750.520b(3), which provides that the trial "court may order a term of imprisonment . . . be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."[5] "The term 'same transaction' is not statutorily defined." *Ryan*, 295 Mich App at 402. But it has a temporal requirement. See *People v Bailey*, 310 Mich App 703, 723-725; 873 NW2d 855 (2015). For example, "[f]or multiple penetrations [in a CSC case] to be considered as part of the same transaction, they must be part of a 'continuous time sequence,' not merely part of a continuous course of conduct." *Id*. at 725, quoting *People v Brown*, 495 Mich 962, 963; 843 NW2d 743 (2014).

"The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' " *Alleyne v United States*, ___ US ___; 133 S Ct 2151, 2156; 186 L Ed 2d 314 (2013). "This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Id*. In light of the constitutional protections of the Sixth Amendment, the United States Supreme Court in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), held that " 'any fact (other than prior conviction) that increases the *maximum* penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Id*. at 476, quoting *Jones v United States*, 526 US 227, 243 n 6; 119 S Ct 1215; 143 L Ed 2d 311 (1999) (emphasis added). The United States Supreme Court in *Alleyne*, 133 S Ct at 2155, extended this rule to fact-finding that enhances statutory *minimum* sentences, holding that "any fact that increases [a defendant's] mandatory minimum [sentence] is an 'element' that must be submitted to the jury." Therefore, in combination with *Apprendi*, the United States Supreme Court created the general rule "that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime," and defendants have the right to have a jury find those elements beyond a reasonable doubt. *Id*. at 2160, quoting *Apprendi*, 530 US at 490. The Michigan Supreme Court applied this general rule in *Lockridge*, 498 Mich at 398, to find that "Michigan's sentencing guidelines scheme" "violate[d] the Sixth Amendment" because it used judge-found facts "to compel an increase in the mandatory minimum punishment a defendant receives." For the reasons stated below, we hold that neither *Apprendi, Alleyne,* nor *Lockridge* compel the conclusion that consecutive sentencing in Michigan violates a defendant's Sixth Amendment protections.

Post-*Apprendi*, the United States Supreme Court specifically held that the Sixth Amendment does not prohibit the use of judicial fact-finding to impose consecutive sentencing.

---

[5] Although the trial court did not specifically so state, it is clear from the record and the context of the court's comments at sentencing that its consecutive sentencing determination was based on the crimes having arisen from the same transaction, and the record further evidences that, on several occasions, defendant sexually touched the victim's intimate areas immediately before penetrating her.

*Oregon v Ice*, 555 US 160, 164; 129 S Ct 711; 172 L Ed 2d 517 (2009). In *Ice*, the defendant challenged an Oregon sentencing statute that allowed a trial court judge to order consecutive sentencing after making specific findings of fact. *Id*. at 165. It contrasted Oregon's (like certain other states') determination to so "constrain judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences" with the common-law tradition followed in most states to "entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently," and the practice in still other states where "sentences for multiple offenses [wer]e presumed to run consecutively, but sentencing judges [could] order concurrent sentences upon finding cause therefor." *Id*. 163-164. The Court concluded that "the Sixth Amendment does not exclude Oregon's choice." *Id*. at 164. In so concluding, the Court found that "twin considerations—historical practice and respect for state sovereignty—counsel against extending *Apprendi's* rule to the imposition of sentences for discrete crimes." *Id*. at 168. It first explained that whether to impose consecutive or concurrent sentencing historically (and for centuries of the common-law predating even "the founding of our Nation") was a "choice [that] rested exclusively with the judge"— it was a decision in which "the jury played no role," and it therefore was not within "the scope of the constitutional jury right" in the Sixth Amendment, as articulated in *Apprendi*. *Id*. at 168-170. Further, the Court reasoned that the states' "authority . . . over the administration of their criminal justice systems lies at the core of their sovereign status," and that the states have historically had an "interest in the development of their penal systems." *Id*. at 170. The Court concluded that the neither the Sixth Amendment nor *Apprendi* required it to restrain the states' traditional power. *Id*. at 171.

The United States Supreme Court issued *Alleyne*, 133 S Ct at 2151, approximately 7 years after *Ice*, and, importantly, made no mention of *Ice*. *Alleyne* extended the rationale of *Apprendi* to mandatory minimum sentences, stating that "any fact that increases the mandatory minimum [sentence for a crime] is an 'element' that must be submitted to the jury." *Id*. at 2155. *Alleyne* did nothing to disturb *Ice's* holding that a trial court's imposition of consecutive sentences based on judge-found facts did not run afoul of Sixth Amendment protections. Our Supreme Court in *Lockridge* applied the rationale of *Apprendi* and *Alleyne* to the Michigan sentencing guidelines, holding that the Sixth Amendment prohibits "judicial fact-finding to score OVs to increase the floor of the sentencing guidelines range." *Lockridge*, 498 Mich at 391. *Lockridge* also made no mention of *Ice* or its applicability to the trial court's ability to order, pursuant to relevant statutes, consecutive sentencing for multiple offenses.

Additionally, federal courts, both before and after *Alleyne*, have recognized that judge-imposed consecutive sentences do not violate the rationales of *Apprendi* or *Alleyne*. See, e.g., *United States v White*, 240 F3d 127, 135 (CA 2, 2001) ("[T]he district court did not exceed the maximum for any individual count. It cannot therefore be said that, as to any individual count, the court's findings resulted in the imposition of a greater punishment than was authorized by the jury's verdict."); *United States v Le*, 256 F3d 1229, 1240 n11 (CA 11, 2001) ("*Apprendi* does not apply when the sentences on two related offenses are allowed to run consecutively under the relevant law and the sentence on each offense does not exceed the prescribed statutory maximum for that particular offense."); *United States v Garcia*, 754 F3d 460, 473 (CA 11, 2014) ("The imposition of consecutive sentences on separate counts of conviction does not have the effect of pushing a sentence on any one count above the statutory maximum for a single count of

conviction. The court was entitled to find the facts [supporting the imposition of consecutive sentences] by a preponderance of the evidence, so long as those facts did not affect either the statutory maximum or the statutory minimum." (Citations omitted)).

We conclude that the rationale of *Ice* should apply to Michigan's rules governing consecutive sentencing, and that this rationale does not run afoul of *Lockridge*, which has its basis in *Apprendi's* and *Alleyne's* reasoning concerning the right to a jury trial and the protections of the Sixth Amendment. We also find persuasive the reasoning of federal courts confronted with this issue after *Apprendi* and *Alleyne*. Although consecutive sentencing lengthens the total period of imprisonment, it does not increase the penalty for any specific offense. By contrast, *Lockridge* prohibits a trial court only from using judge-found facts to increase "the floor of the sentencing guidelines range," and thereby the mandatory minimum sentence for an offense, and it prohibits the guidelines from being mandatory. *Lockridge*, 498 Mich at 391. No such increase occurred here, nor would the trial court's imposition of consecutive sentences be affected by whether the sentencing guidelines are mandatory or advisory.

Therefore, although defendant correctly notes that the jury's verdict in this case did not necessarily incorporate a finding that his CSC-I conviction "ar[ose] from the same transaction" as did his CSC-II conviction, MCL 750.520b(3), defendant has no Sixth Amendment right to have a jury make that determination. *Ice*, 555 US at 164. We discern no conflict between this holding and *Lockridge*.

Affirmed.

/s/ Mark T. Boonstra
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola