*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GEORGE EDWARD THOMPSON, JR.,

        Defendant-Appellant.

UNPUBLISHED
September 14, 2023

No. 359776
Kalamazoo Circuit Court
LC No. 2020-001232-FC

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of accosting a child for immoral purposes, MCL 750.145a; and two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b). We affirm.

## I. BACKGROUND

In 2013, defendant began a relationship with the victim's mother, Betsy Thompson. From 2018 to 2020, the victim lived with defendant, as did her mother, brother, sister, and, intermittently, defendant's three children.

At trial, the victim testified that defendant sexually abused and assaulted her both before and while she was living with defendant. The victim remembered the first incident was when she was 12 years old. The victim recalled that she had fallen asleep on defendant while watching movies, and after everyone else went to bed, defendant digitally penetrated the victim's vaginal opening. According to the victim, this was just the first of many times she was sexually abused by defendant. The victim recounted an incident when defendant "put his dick into [the victim's] pussy" in defendant's office late at night, and said that, on another occasion, defendant "had sex" with her in his office. The victim recalled another incident in defendant's bedroom where defendant "put [the victim's] legs up in the air and then [] started—[] did penetration"; she said, "I watched TV while [defendant] raped me." The victim also recounted how defendant would sexually abuse her in his truck. The victim testified that defendant "would take [the victim's] hand and he would . . . make [her] put [her hand] in his pants and he [made] [her] jerk him off." She testified that defendant would "sometimes . . . make her suck his dick" in the truck as well. She

-1-

said that these sexual assaults in defendant's truck occurred "[m]any times," estimating that it occurred "about 3-times a week." The victim said that defendant only raped her when nobody was around. She also confirmed that there were incidents when defendant sexually assaulted her "and [defendant] was standing."

At defendant's trial, the prosecution called as a witness Aaron Roberts, a digital forensic analyst with the Michigan State Police (MSP), who was qualified as an expert in computer forensics. Roberts testified that he analyzed defendant's cell phone and found a video of the victim wrapped in a blanket with the victim's genitalia exposed. He confirmed that the video recorded the following exchange when the person holding the cell phone reached for the victim: "[the victim] says, don't tell [Betsy] and then there's a voice that sounds like [defendant's] that says, I want to see it—I want to see it," and then the victim replies, "no you can see it later."

Defendant presented six character witnesses as part of his defense at trial: the victim's grandmother, the victim's older sister, the victim's twin brother, the victim's two stepbrothers, and Betsy. All six witnesses testified that the victim was a liar and did not follow the house rules. They also testified that they never heard or witnessed any sexual incidents between defendant and the victim.

Defendant also presented evidence that he suffered from medical conditions that made the victim's testimony incredible. Betsy testified that defendant had a spinal injury, which compressed and confined the nerves in defendant's back causing erectile dysfunction, so they had to have sex in a "neutral position" for defendant to achieve an erection. Betsy explained that defendant's medical condition prevented defendant from having sex standing up or sitting down because he could not achieve an erection while standing. Betsy also testified that medication had not been effective in treating defendant's erectile dysfunction. Defendant, testifying in his own defense, reiterated Betsy's testimony about his medical issues. Defendant confirmed that he had erectile dysfunction, could not have sex standing up, and had to be in the neutral position to have sex. He also confirmed that erectile-dysfunction medication did not work. In further support of this defense, defendant's medical records were admitted into evidence.

Defendant also reiterated his character witnesses' testimony that the victim was a constant liar. Defendant explained that he took the video of the victim naked because he wanted evidence that the victim broke house rules. He denied any sexual activity with the victim. During defendant's cross-examination, the prosecution questioned defendant about multiple sexual messages he sent to various women, including messages propositioning the women for sex and asking for sexual images, but defendant said he did not remember most of the messages.

The jury convicted defendant as stated, and after he was sentenced, he moved for a new trial, arguing that his trial counsel provided ineffective assistance. The trial court held an evidentiary hearing on defendant's claims, at which defendant's trial counsel answered numerous questions regarding his representation of defendant and their trial strategy. Following this hearing, the trial court issued a 15-page opinion in which it denied all of defendant's ineffective-assistance claims. That opinion will be discussed in more detail throughout this opinion. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant raises numerous claims of ineffective assistance of counsel. Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings supporting its decision are reviewed for clear error, while the court's ultimate determination about whether a defendant's constitutional right to the effective assistance of counsel was violated is reviewed de novo. *Id*.

"To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021) (quotation marks and citation omitted). Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Defense "counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). For that reason, this Court will generally "not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). However, a strategy "in fact must be sound, and counsel's decisions as to it objectively reasonable; 'a court cannot insulate the review of counsel's performance by calling it trial strategy.' " *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014), quoting *Trakhtenberg*, 493 Mich at 52.

## A. THE VICTIM'S SEARCH HISTORY

Defendant first argues that his trial counsel provided ineffective assistance because he did not introduce evidence that the victim searched "adult pornography sites [for] sexual encounters like 'step-daddy' sex and/or 'stepbrother' pornography." We disagree.

In rejecting this argument, the trial court in its written opinion explained:

> Mr. Richardson [defense counsel] testified that he was aware that Betsy Thompson possessed this information and that he considered its utility. Mr. Richardson stated that he viewed this evidence as "horrible" and "incredibly damaging," concluding that the use of the evidence would likely create more of a problem for his defense. More precisely, because the searches occurred following the alleged assaults yet before the formal accusations, Mr. Richardson imagined that the evidence would augment the government's contention that [the victim] had been "sexualized and traumatized" at a young age. He deemed such searches would substantiate the People's position that [the victim] had been overly sexualized as a result of the assaults committed by her step-father. In his estimation, it would "validate" and "lend credibility to the alleged victim."
>
> Mr. Richardson also testified that Defendant and Betsy Thompson told him that the searches were conducted using [the victim's] electronic device. However, he also understood that there were multiple people present during periods that [the

-3-

victim] was at the house and because no one had exclusive access to this particular computer, he wasn't sure that the complainant was the person who actually performed such searches.

Mr. Richardson told this court that he reasoned that the risk of putting this evidence before the jury outweighed the potential benefit. Such a decision is not unlike many difficult and often-times competing decisions a trial attorney must make during the course of preparing for and delivering evidence and argument before a jury. Matters such as this are considered to be legitimate trial strategy and not unreasonable nor grounds for finding ineffective assistance of counsel.

Adjusted for and with the benefit of hindsight, it may prove to be another attorney's position that attempting to introduce this evidence was worth the cost. Based on what the court has been provided, it finds that Mr. Richardson recognized the pros and cons of the evidence and, not inappropriately, decided that it would be best to avoid introducing the evidence at trial. Mr. Richardson's calculated decision does not leave this court with a firm belief that his rationale and ultimate choice fell below an objective standard of reasonableness nor that it prejudiced Defendant.

Rather than substantively addressing the trial court's reasoning, defendant merely reiterates his belief that it was unreasonable for counsel to not admit the victim's search history as evidence.[1] We agree with the trial court, however, that counsel's decision to not admit evidence of the victim's search history was reasonable trial strategy. Accordingly, for the reasons explained by the trial court, we reject this claim of ineffective assistance.

## B. DEFENDANT'S MEDICAL RECORDS

Next, defendant argues that his trial counsel provided ineffective assistance because he failed to introduce additional medical records and doctor testimony documenting defendant's erectile dysfunction. We disagree.

In rejecting this claim, the trial court reasoned:

Defendant's arguments here fail to convince the court that his attorney was ineffective. First, Mr. Richardson testified that he submitted to the jury, by stipulation, certain medical records that he was given by Defendant and his wife which illuminate Defendant's multiple medical issues. Second, the court does not find that the records referred to at the evidentiary hearing provide additional

---

[1] At one point, defendant reasonably points out that defense counsel could have established that the search history was in fact the victim's by interviewing every person in the house who had access to the computer to establish that none of them searched for the "step-daddy" or "stepbrother" pornography. Even if we agreed with defendant, the nonexclusive use of the computer at issue was a tertiary reason defense counsel gave for not seeking to admit evidence of the victim's search history. Clearly, the central reason was out of a reasonable fear that the prosecution would use the evidence to bolster its case to the detriment of defendant's.

meaningful evidence of the Defendant's physical challenges as they are short on details, with the exception of Defendant's own statements about his medical problems, which he eventually testified to. For example, nothing in the medical documentation provided to the court at the hearing illustrates anything about Defendant having an inability to realize an erection unless found in a neutral supine position. Third, trial counsel supported the admitted medical records with essentially identical testimony from both Defendant and his wife that Defendant suffered from erectile dysfunction and that Defendant struggled to maintain an erection absent a certain physical position. And fourth, there has been no evidence presented that Mr. Richardson was aware that Defendant actually employed a surgeon who may have been able to provide trial counsel with further insight on the issue of erectile dysfunction.

The court finds that trial counsel's decision to present the documents that were supplied and complement those documents from two witnesses to explain, intimately and in laypersons terms, Defendant's significant and multiple medical issues, sufficiently provided the jury with meaningful ammunition to rebut the complainant's assertions. Mr. Richardson acknowledged that he could have sought additional records. However, he anticipated the jury may respond negatively to a deluge of too much medical information. The scope of what he delivered, he believed, created a credible and powerful counter to the government's theory. The court does not find that this approach fell below an objective standard of reasonableness nor that it prejudiced Defendant.

Like with his last ineffective-assistance claim, defendant fails to meaningfully explain why the trial court erred by rejecting this claim of ineffective assistance. Defendant merely asserts, without any citation, that if a defense is based on a medical diagnosis, defense counsel "CANNOT simply accept documents from a client without seeking all of the relevant documents from the medical provider(s) directly." Obviously, no such blanket rule exists; counsel is only required to conduct a reasonable investigation. See *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). For the reasons explained by the trial court, we conclude that defense counsel's performance in this respect was objectively reasonable; defense counsel adequately investigated defendant's medical condition and presented to the jury both medical records confirming defendant's medical condition and testimony from multiple witnesses confirming the same.

We further note, however, that even if defense counsel should have investigated this matter further, defendant has failed to establish that he was prejudiced by that failure. Defendant has not provided an offer of proof of what the additional medical records would have shown or what the content of the unidentified doctors' testimonies would have been. Without such evidence we have no way of determining whether defense counsel's alleged failure to present the evidence would have prejudiced defendant. In other words, this ineffective-assistance claim must fail because defendant has failed to establish the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1991).

## C. THE VICTIM'S RECANTATION

Defendant next complains that counsel provided ineffective assistance because he failed to elicit testimony from Betsy that the victim suggested to Betsy that she was falsely accusing defendant. We disagree.

In summarizing and rejecting this claim, the trial court explained:

> Betsy Thompson stated that at some point after [the victim] reported the crimes, she threatened to commit suicide. Betsy then took her to Borgess Hospital. There, Betsy asked her daughter, "do you not want to tell the truth because you'll get into trouble?" According to Betsy Thompson, [the victim] answered, "yes, I will get into trouble if I tell the truth." Betsy Thompson agreed that her question stemmed from Betsy's concern that [the victim] was a chronic liar and was not specifically coupled to the allegations about Defendant. Similarly, this reaction enjoys insufficient affiliation to the instant matter. Because of the obvious ambiguity, [the victim's] response could certainly be viewed as a general statement of wholly, non-specific fears that a teenager, especially one in evident mental distress, might possess.

> Importantly, Mr. Richardson testified, without hesitation, that he was never made aware of a specific "recantation" by the complainant. Moreover, it should be noted that at trial, [the victim] did testify that she was initially afraid to tell, because she didn't think anyone would believe her, especially her family. In any event, because Mr. Richardson was not privy to a specific recantation by the complainant, he cannot be criticized for not pursuing such an avenue of questioning with Betsy Thompson. . . . Based on everything that has been provided, the court does not find that trial counsel's failure to inquire of such imprecise and likely irrelevant comments through Betsy Thompson . . . fell below an objective standard of reasonableness or that it prejudiced Defendant.

As with his other claims, defendant does not explain why the trial court's reasoning for this ineffective-assistance claim was error. Most troubling, defendant completely ignores the trial court's reliance on the fact that defendant's trial counsel was never made aware of the victim's supposed "recantation." It is defendant's burden to establish that his trial counsel rendered ineffective assistance, and without explaining why defense counsel should have been aware of the victim's alleged recantation, defendant cannot sustain his ineffective assistance claim.

## D. DEFENDANT'S DAUGHTER

Defendant next argues that his counsel provided ineffective assistance because he failed to interview defendant's daughter before trial, and consequently failed to call her as a defense witness at trial. We disagree.

In rejecting this claim, the trial court explained:

During the trial, Mr. Richardson presented Betsy Thompson and multiple other family members, all of whom testified that [the victim] had a reputation for being a perpetual liar, while others specifically indicated that she was a manipulator and that she failed to follow the household rules. In fact, Betsy Thompson went so far as to say [the victim], her biological daughter, is a constant, pathological and narcissistic liar and untrustworthy. In addition, all of Defendant's supportive witnesses confirmed that no one ever heard nor saw Defendant having sexual relations with [the victim].

At the evidentiary hearing, it was revealed that Mr. Richardson never interviewed [defendant's daughter], step-sister to [the victim]. Mr. Richardson claimed that based on input from both Defendant and Betsy Thompson she was "not brought forward as a good witness," and based on the information they provided, "didn't have anything of value as far as being a good witness."

It was also disclosed that [defendant's daughter] spent alternating weeks at the home of her father, the Defendant. She testified that she neither heard nor saw any acts of sexual assault committed by Defendant against [the victim]. In addition, she considered herself to be a good friend of [the victim] even though her probable trial testimony would have included that [the victim] never told the truth. [Defendant's daughter] would have been the seventh family member, not including the Defendant, who would have offered such a portrayal. . . .

[Defendant's daughter] also mentioned that she was unable to fully explain a reference [the victim] made approximately one year prior to the accusation. Apparently, at a time when the two were arguing, [the victim] stated something to the effect of "taking her father (Defendant) away." In other words, [defendant's daughter] did not know why [the victim] made such a comment or offer any context to the remark, other than the two were in the midst of a quarrel.

As stated earlier, a trial attorney's evaluation whether to call a particular witness is presumed to be a matter of trial strategy and this court should not substitute its judgment for that of counsel regarding such strategy. Defendant fails to overcome this strong presumption here. This court does not find the decision not to put on the cumulative testimony of [defendant's daughter] fell below an objective standard of reasonableness as it would have added little to the evidence already available for the jury. [Citation omitted.]

Once again, defendant gives the trial court's reasoning short shrift. Defendant's only challenge to the trial court's reasoning is that it supposedly ignores the fact that defense counsel did not call defendant's daughter as a witness because he failed to adequately investigate the matter. But that assertion is not borne out by the record; defense counsel testified that he decided not to investigate defendant's daughter as a potential witness after he received input from defendant and Betsy that defendant's daughter would not make a good witness and that her testimony would be cumulative to the testimony of defendant's other witnesses. In providing objectively reasonable representation, counsel has "a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52

(quotation marks and citation omitted; emphasis added). Defense counsel interviewed defendant and Betsy, who both said that defendant's daughter would not make a good witness and would not add "anything of value." That in turn made further investigation into defendant's daughter unnecessary. Accordingly, defendant has not established that his counsel's failure to interview defendant's daughter fell below an objective standard of reasonableness.[2]

## E. ROBERTS' TESTIMONY

Defendant next argues that defense counsel provided ineffective assistance by failing to object to the prosecution's late addition of Roberts to its witness list. We disagree.[3]

The trial court provided a detailed analysis of this issue and why defense counsel's decision to not contest the late addition of Roberts was reasonable trial strategy, explaining:

> Mr. Richardson [defense counsel] did testify that he received the downloaded information from [defendant's] phone from MSP prior to trial and expected that an MSP witness would testify to a single text message and video. Mr. Richardson viewed the lone text message as "nebulous" and that it "was a weakness in the prosecution's case."
>
> Mr. Richardson testified at length regarding his reasoning when he agreed to the witness' late addition. He commented on his extensive experience with the bench and the likelihood that such a witness would be permitted to be added so long as the defense was not surprised. Mr. Richardson testified that the government's trial prosecutor had informed him a few days before the trial that Mr. Roberts name had been omitted by oversight due to their erroneous belief that another witness was more appropriate. Mr. Richardson admitted that Mr. Roberts would not have been a new revelation as his name came up during the course of the investigation. In addition, the witness was listed as a res gestae witness when the Information was filed on September 8, 2020.

---

[2] To the extent that defendant raises this ineffective assistance claim outside a failure-to-investigate framework, and more generally argues that defense counsel was ineffective merely because he failed to call defendant's daughter as a witness, we reject that argument for the reasons stated by the trial court.

[3] At one point in his brief, defendant seems to suggest that his trial counsel provided ineffective assistance because he failed to obtain the search warrant authorizing Roberts' search of defendant's phone. Yet defendant does not explain how this failure prejudiced him; defendant never argues that the warrant was deficient to authorize the search or that the search was otherwise unconstitutional. Stated differently, defendant has failed to even argue that the second-prong of the ineffective assistance analysis was satisfied. For that reason alone, this portion of his argument necessarily fails.

Furthermore and importantly, Mr. Richardson testified that the defense strategy included actually wanting to have the evidence Mr. Roberts testified about admitted. Trial counsel stated,

> we wanted that evidence (the text message and video of a naked [the victim]) to come in because it goes to the defense; a scarcity of evidence, a lack of evidence essentially to any kind of relationship and really just had just one text message that didn't really indicate anything. And, later on, the alleged victim testified that there were hundreds of text messages, there is this years' long relationship. There is absolutely no evidence of this. This was, in fact, the trial strategy. This is what I argued to the jury, which was, 'where is it?' She's claiming that there was this relationship. There is [sic] all these messages. This is all they had.

Further, Mr. Richardson stated that the defense approach was to explain the lone video of [the victim] as a particular example of "one who was breaking the rules and where the Defendant was trying to catch her in the act to get her in trouble and that was the whole point. Essentially, the evidence that they did find really, frankly wasn't that damaging." Later, he added that the Defendant, "was trying to catch her breaking the rules which she consistently did having sex with other boys and doing other things in the house . . . the strategy was to minimize those things and explain to the jury this is why he had those things on his phone . . . which went right along with our strategy."

Under these circumstances, this court does not find fault in Mr. Richardson's failure to object to the untimely addition of Mr. Roberts. At trial, Mr. Richardson declared that he would not have been able to faithfully argue surprise or that it was unfair due to the omission and the court, undoubtedly, under the conditions presented, would have permitted the witness to testify, notwithstanding the notice/time requirement. Such a decision, centered on a realistic belief that the witness would have been allowed to be added late, does not fall below an objective standard of reasonableness.

As far as trial strategy concerning the use of the evidence, the court appreciates trial counsel's thought process in deciding to include the evidence. With a modicum of text message evidence depicting a relationship between [the victim] and Defendant, the lack of such communication [the victim] said existed provided defense with damaging and significant proof casting doubt on her veracity. The existence of only one video and a plausible reason for that video, highlights [the victim's] version of a multi-year sexual relationship as dubious.

The question is not whether another trial counsel would have employed a strategy that included a full-throated attempt to exclude the text message and video. The court views the considered decision to concede the evidence in order to garner an advantage and cast doubt over the legitimacy of the complainant's claims as

tactical and does not fall below an objective standard of reasonableness and did not prejudice the Defendant. [Footnote and citation omitted.]

Once again, defendant gives only cursory treatment to the trial court's detailed analysis about why defense counsel's decision to not object to the late addition of Roberts was reasonable trial strategy. Rather than explaining how his trial counsel's strategy was unreasonable, defendant simply asserts that it was.[4] This is plainly insufficient. Counsel provided a coherent and reasoned basis for his trial strategy, and defendant's failure to explain why that strategy was unreasonable means that his ineffective assistance claim must fail.

## F. CROSS-EXAMINATION OF DEFENDANT

Lastly, defendant argues that his trial counsel provided ineffective assistance when he failed to object to the prosecution's line of questioning concerning sexually explicit messages defendant allegedly sent to other women. We disagree.

In denying this claim for ineffective assistance, the trial court explained:

Mr. Richardson confirmed that he employed a particular rationale for not objecting to this line of questioning. His purpose in allowing the exchange was an effort to convince the jury that these interactions, both in messages and communications, depicted a Defendant who enjoyed normal, adult-based sexual attractions, not one with a prurient interest in children. Trial counsel stated that he planned for this evidence to emphasize that Defendant had absolutely no interest in minor children. He felt this theory would be bolstered by evidence of a healthy and frequent appetite in only adult women, including text and communication messages with them.

Defendant argues that although this may be one person's approach, the type of evidence admitted would have more likely caused the jury to find the Defendant to be an unseemly character and prejudiced him by portraying him in a worse position than without it. The court disagrees. Mr. Richardson claims that beyond testimonial evidence, he felt the need to have supplemental evidence to convince the trier of fact of the normalcy of Defendant's sexual needs. Defendant was a military veteran with many physical issues that prevented him from engaging in unhampered sexual activity. According to Mr. Richardson, acknowledging that fact and adding to it specific examples of how Defendant fulfilled these desires, was instrumental in countering the contention that he was a child predator.

---

[4] Defendant also seems to suggest that the prosecution was only able to cross-examine defendant about messages he sent to adult women because of Roberts' testimony, but defendant fails to explain why Roberts' testimony was necessary for this purpose. Defendant has also failed to establish that the prosecution would have been unable to cross-examine defendant about the messages if Roberts did not testify. Defendant's failure to develop either argument is tantamount to abandonment. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

Again, trial strategy, if it is based on a reasonable foundation, is not to be second-guessed by this court. The court finds that the approach utilized was a candid attempt to illuminate Defendant's character in a noticeably dissimilar posture than the government's presentation.

Once again, defendant gives the trial court's reasoning only cursory treatment. Defendant claims that the trial court's analysis ignores that the messages directly contradicted his defense that he could not achieve an erection, but that is both a misrepresentation of defendant's defense and of the impact of the messages. Defendant's defense was not that he could not achieve an erection; it was that the victim's testimony was incredible. And defendant did not support this defense with evidence that he could never achieve an erection; he supported the defense with evidence that he could only achieve an erection while his spine was in a neutral position in an effort to cast doubt on the victim's testimony that he sexually assaulted her while he was standing up and sitting down. And even if defendant's defense *was* that he was incapable of ever achieving an erection, the messages would still not contradict that defense; a person incapable of achieving an erection can still send sexually explicit messages, and the sending of sexually explicit messages simply does not establish that the person sending the messages is capable of achieving an erection. In short, defendant has not offered any persuasive argument for why his trial counsel's strategy was unreasonable.

As stated, "many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich App at 242. Defense counsel's strategy here may have been risky, but that alone does not make it unreasonable. Because this Court will not substitute its judgment for that of counsel regarding matters of reasonable trial strategy, *Davis*, 250 Mich App at 368, and because defendant has not established that counsel's strategy was in fact unreasonable in this respect, we agree with the trial court that defendant has failed to establish his claim of ineffective assistance of counsel.[5]

Defendant, at one point, alternatively argues that his counsel rendered ineffective assistance because he admitted at the post-trial evidentiary hearing that he did not prepare defendant for the prosecution's cross-examination about the sexually-explicitly messages before defendant chose to testify. In support of this claim, defendant cites to a portion of defense counsel's testimony at the evidentiary hearing in which defense counsel said, "We—we knew what—we knew what the substance of the texts is [sic], and we talked about that. And I said if you take the stand, you're gonna open yourself up to those things. You're okay with that? He said yeah." In his appellate brief, defendant asserts that this establishes that trial counsel did not present defendant with the content of the messages before a decision was made whether defendant should testify. The testimony simply does not establish what defendant asserts it does. Accordingly, this

---

[5] Defendant further argues that defense counsel should have objected to the messages because they were inadmissible under MRE 401 and MRE 403. We need not address the merits of the argument because, as already explained, defense counsel's trial strategy to admit the evidence was reasonable. Stated differently, even if counsel could have raised a meritorious objection to the introduction of the evidence, his decision to not do so did not fall below an objective standard of reasonableness.

portion of defendant's ineffective assistance claim fails because defendant has not established the factual predicate of his claim. *Hoag*, 460 Mich at 6.

## III. SUFFICIENCY OF THE EVIDENCE

In his final issue on appeal, defendant claims that there was insufficient evidence to support his convictions. According to defendant, "The ONLY evidence [to support his convictions] was the testimony of the complainant, a known liar and manipulator, who manufactured so many facts that were either completely rebutted or physically impossible." This ignores the fact that it is well-established in this state that the testimony of a victim alone is sufficient evidence to support a conviction. See *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016); MCL 750.520h. Moreover, as this Court has explained:

> [A]lthough it is sometimes appropriate for a court to remove a credibility assessment from the jury's consideration, those circumstances are extremely rare and require testimony that borders on being impossible. Otherwise, only the jury may determine the credibility of a witness or the weight to be afforded any evidence[.] [*People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020) (citation omitted).]

Defendant has not explained why this case is one of the "extremely rare" cases in which this Court can remove the credibility determination from the jury, so we defer to the jury's credibility determination. See *id*.; *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Because defendant does not contest that, if the victim's testimony is credited, then there was sufficient evidence to support his conviction, his insufficiency-of-the-evidence claim fails.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney