*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. T. L. LYNCH MAJOR, Minor.

UNPUBLISHED
March 17, 2026
11:26 AM

No. 375169
Wayne Circuit Court
Family Division
LC No. 2024-000939-NA

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Respondent-father physically and sexually assaulted his minor niece, pleaded guilty to two counts of criminal sexual conduct, and served several years in prison. While on parole, officials discovered he was KLM's father and that he took steps to hide living with KLM and his wife, respondent-mother, despite his parole conditions prohibiting any contact with minor children. Respondent-father appeals from the trial court's order terminating his parental rights to KLM, asserting the evidence was insufficient to establish the statutory grounds for terminating his parental rights, and that termination was not in KLM's best interests. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

KLM tested positive for marijuana when she was born, triggering an investigation by Child Protective Services (CPS). That investigation revealed respondent-father[1] and respondent-mother previously had their parental rights terminated to two sons for "serious and chronic neglect or physical or sexual abuse" after they physically injured respondent-mother's minor nieces in the name of "heavy handed" punishment—hitting them with belts and hangers. See *In re Ewing Minors*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2013 (Docket

---

[1] Respondent-father is allegedly not KLM's biological father, but that matters not for these proceedings given he has legal rights to KLM—as he admitted at the Preliminary Hearing, he is KLM's legal father because he was married to KLM's mother at the time of KLM's birth, see MCL 722.1433(f).

-1-

Nos. 313313 and 313315), pp 1-2. Respondent-father also "fondled . . . and penetrated [the] mouth and anus" of one of them. *Id*. at 2. He pleaded guilty to first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b), and served about 10 years' imprisonment. Upon his release on parole in May 2022, respondent-father was required to comply with the Michigan Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*.

Before the Michigan Department of Corrections released respondent-father, his parole officer took steps to reinforce one of his parole conditions—no contact with minor children. The parole officer first explained this to respondent-father during parole orientation. He also visited respondent-father's intended residence in Detroit and spoke to respondent-mother about the conditions of respondent-father's parole, including the no-minor-contact requirement. She reported he would be living in their home with her and would help him with transportation and finding employment. Importantly, the parole officer again confirmed respondents understood the condition that respondent-father was prohibited from having contact with minor children.

Respondent-father was largely compliant with his parole conditions. He was not charged with any criminal activity, and there were no complaints about him sexually assaulting or touching children. Respondent-father also completed his sex offender treatment program and obtained a job with respondent-mother's employer. His parole officer reported that respondent-mother never mentioned domestic issues or divorcing respondent-father, and respondents did not mention having another child in their conversations.

Shortly before respondent-father's parole was set to expire, a CPS investigator spoke to respondent-mother at the Detroit home about KLM. Respondent-mother told the investigator she did not know respondent-father's whereabouts. Two days later, the investigator discovered respondent-father likely lived in the Detroit home with respondent-mother—that was the address he registered both under SORA and with the Secretary of State. Police officers then went to the house to check whether respondent-father was living at the home with KLM in violation of his parole conditions. He answered the door and claimed he did not know where respondent-mother was, saying she did not reside at the home, and he had not seen her for some time. Police searched the house and found respondent-mother hiding with KLM upstairs.

The investigator immediately moved respondent-father out of the home and CPS obtained a court order removing KLM from the residence and suspending respondent-father's parenting time. After a preliminary hearing, the trial court accepted the permanency plan of adoption and ordered respondent-father's parenting time remain suspended, indicating: "[E]ven if supervised, those visits may be harmful to the child due to his criminal conviction for CSC and his two prior terminations of parental rights." A few days later at a pretrial hearing, respondent-father noted his interest in releasing his parental rights to KLM.

At the outset of adjudication, the trial court took "judicial notice of the file, findings of facts, and prior court orders," including respondent-father's criminal history. The CPS investigator opined it was in KLM's best interests to terminate respondent-father's parental rights because of his past case history with CPS, his CSC convictions, and his current parole status. KLM's case worker agreed, testifying it was in KLM's best interests to terminate respondent-father's parental rights because his charges were "against underaged girls. It's just a scary situation to put a child

into." And, the case worker emphasized, respondent-father said, "he wanted to terminate his rights at the last hearing." Before the conclusion of that hearing, the trial court denied respondent-father's request for supervised, structured parenting time because that would violate the conditions of his parole.

By the time of the continued adjudication, respondent-father's parole ended. KLM's case worker maintained her position concerning termination of parental rights because respondent-father allegedly is not the biological father, had no contact or parenting time with KLM, and is a registered sex offender. The case worker's supervisor agreed: "There were two youths that were forced to endure horrific trauma, and that trauma has to be carried with them for the rest of their life [sic]. It would be an injustice to [KLM] to subject her to be at risk to be the third child to undergo that trauma as well."

The trial court ultimately terminated respondent-father's parental rights to KLM under MCL 712A.19b(3)(i) (parental rights to one or more siblings terminated due to serious and chronic neglect or physical or sexual abuse, parent failed to rectify conditions); MCL 712A.19b(3)(j) (reasonable likelihood, based on conduct or capacity of parent, child will be harmed if returned to home of parent); and MCL 712A.19b(3)(m)(*i*) (parent is convicted of violating MCL 750.520b and MCL 750.520c, and termination is in child's best interests because continuing the parent-child relationship would be harmful to child). The trial court also concluded that it was in KLM's best interests to terminate respondent-father's parental rights because of his CSC convictions, his parole violation, and the lack of a meaningful bond with her. But it did not terminate respondent-mother's parental rights, concluding that was not in KLM's best interests.[2] This appeal by right followed.

## II. STATUTORY GROUNDS

We first consider and reject respondent-father's argument that the evidence was insufficient to establish statutory grounds.

To terminate parental rights, a trial court must find clear and convincing evidence supports at least one of the statutory grounds for termination listed in MCL 712A.19b(3). *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). Only "one ground is sufficient to affirm the termination of respondent's parental rights." *Id*. at 273; see also *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). We review a trial court's factual findings and determinations regarding statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014).

MCL 712A.19b(3)(m)(*i*) permits a court to terminate parental rights if it finds by clear and convincing evidence the parent is convicted of violating one or more listed offenses, including MCL 750.520b (CSC-I) and MCL 750.520c (CSC-II), and termination is in the child's best interests. "The elements of CSC–I under MCL 750.520b(1)(a) are that (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). A conviction under MCL 750.520c(2)(b) requires finding the defendant " 'engage[d] in sexual contact with' the victim

---

[2] Because respondent-mother's rights were not terminated, she is not a party to this appeal.

-3-

who was 'under 13 years of age' when he was '17 years of age or older.' " *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016), quoting MCL 750.520c(1)(a) and (2)(b).

The trial court took judicial notice of respondent-father's uncontested criminal record reflecting his two CSC convictions under MCL 750.520b(1)(a) and MCL 750.520c(2)(b). Those plainly satisfy the statutory grounds for termination set forth in MCL 712A.19b(3)(m)(*i*). Consequently, the trial court properly considered the CSC convictions and was not required to find clear and convincing evidence in any other statutory ground to proceed to a best-interest determination. *In re Sanborn*, 337 Mich App at 273. And because the trial court did not err in finding applicable MCL 712A.19b(3)(m)(*i*), we do not address the propriety of any other grounds found by the trial court. Nor do we consider any other grounds that may have supported termination, like defendant's SORA status.

## III. BEST INTERESTS

We turn next to respondent-father's argument that termination of his parental rights was not in KLM's best interests,[3] which we review for clear error. *In re White*, 303 Mich App at 713. In our view, respondent-father's history of physical and sexual abuse of minor girls that led directly to circumstances in which he lost his rights to his biological sons and was prohibited from having contact with minors (including KLM) and there being no bond between respondent-father and KLM demonstrates the trial court did not commit clear error requiring reversal.

If a statutory ground for termination has been established and the trial court "finds from a preponderance of the evidence on the whole record that termination is in the child[]'s best interests," it must order termination of parental rights. *Id.* Factors to be considered include " ' the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id.* (citations omitted). The parent's history of domestic violence and the parent's history of parenting time with the child are also relevant factors. *Id.* at 714.

Respondent-father's history of CSC and physical abuse of young girls related to KLM not only reflects his questionable parenting abilities but may also be indicative of how respondent might treat KLM. *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014); see also *In re Jenks*, 281 Mich App 514, 515; 760 NW2d 297 (2008). He beat his minor nieces by marriage with belts and hangers and forced them to do exercises as punishment, admitting his efforts were "heavy handed." *In re Ewing*, unpub op at 1-2. Most significantly, one niece testified he "fondled her and penetrated her mouth and anus." *Id.* at 2. This conduct was sufficiently severe to warrant termination of his parental rights to his biological sons despite no allegations of physical or sexual abuse against them. It is not unreasonable—as several witnesses opined—to anticipate respondent-father's treatment of KLM might closely resemble his maltreatment of the nieces.

---

[3] Respondent-father's appellate brief alludes to him not being offered a case service plan as required by MCL 712A.18f. But he does not set this forth in his statement of issues, rendering it abandoned. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 543; 730 NW2d 481 (2007).

Consider too that respondent-father's parole conditions flowing from his CSC convictions prohibited him from having contact with minor children—his own actions prevented him from having parenting time with KLM, and as a result, they lacked a meaningful bond. Respondent-father now complains he was never given the chance to have parenting time, even after he completed his parole. KLM was born in late 2023, and respondent-father's parole expired in November 2024. He had been absent from KLM's life for nearly one year before the January 2025 dispositional hearing and had few opportunities for parenting time to develop a bond within those weeks.

Finally, respondent-father was not forthcoming about KLM's conception and birth with his parole officer and then denied knowing where respondent-mother was when confronted by police officers in an effort to hide KLM. That reflects a willingness to ignore the law, which could negatively affect "permanency, stability, and finality" in KLM's life if respondent-father's rights were not terminated. *In re White*, 303 Mich App at 713.

Accordingly, the trial court did not clearly err in determining termination of respondent-father's parental rights is in KLM's best interests.

## IV. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

-5-