*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON LANE DEBANDT,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2025
11:48 AM

No. 366601
Oakland Circuit Court
LC No. 2021-278536-FH

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

Defendant, Jason Debandt, appeals as of right his jury-trial convictions of two counts of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(e)(*i*); one count of fourth-degree criminal sexual conduct (CSC IV), MCL 750.520e(1)(f)(*i*); and two counts of disseminating sexually explicit matter to a minor, MCL 722.675. Debandt was sentenced to 10 to 15 years' imprisonment for each CSC III conviction; one to two years' imprisonment for the CSC IV conviction; and one to two years' imprisonment for each disseminating sexually explicit matter to a minor conviction. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Debandt's convictions arise out of his inappropriate relationships with two high school students. During these relationships, Debandt was the choir and theater teacher at a high school. Debandt's convictions comprise of three CSC counts, which were committed against KE at Debandt's home; and the two counts of disseminating sexually explicit matter to a minor, which are related to Debandt's sending explicit photographs and videos to VL when she was a minor. At trial, other-acts evidence was presented through the testimony of EF and MM, both of whom had sexual relationships with Debandt when they were high-school students.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Debandt first argues that he was denied due process because the prosecution failed to present sufficient evidence to support his convictions. "We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (quotation marks and citation omitted).

### B. ANALYSIS

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). There is sufficient evidence for a guilty verdict where "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (quotation marks and citation omitted). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). "It is the jury's task to weigh the evidence and decide which testimony to believe." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008) (quotation marks and citation omitted).

Debandt was convicted of two counts of CSC III under MCL 750.520d(1)(e)(*i*) for digital penetration of KE's vagina and cunnilingus. The elements required the prosecution to prove that Debandt "engage[d] in sexual penetration with a public school student" when that student was "at least 16 years of age and less than 18 years of age." *People v Lewis*, 302 Mich App 338, 344; 839 NW2d 37 (2013); MCL 750.520d(1)(e). Additionally, the prosecution had to establish that Debandt was a teacher when the sexual penetration occurred. MCL 750.520d(1)(e)(*i*). " 'Sexual penetration' means . . . cunnilingus, . . . or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

Additionally, Debandt was convicted of CSC IV under MCL 750.520e(1)(f)(*i*) for touching KE's breasts. CSC IV requires the defendant to engage in sexual contact with another person. *People v Green*, 313 Mich App 526, 538; 884 NW2d 838 (2015). Additionally, because Debandt was charged under MCL 750.520e(1)(f)(*i*), the prosecution had to prove KE was "at least 16 years of age but less than 18 years of age and a student at a public school," and Debandt was her "teacher. . . ." See MCL 750.520e(1)(f)(*i*). "[S]exual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner[.]" MCL 750.520a(q). Breasts are an intimate part. MCL 750.520a(f). "[W]hen determining whether touching could be reasonably construed as being for a sexual purpose, the conduct should be viewed objectively under a reasonable person standard." *People v DeLeon*, 317 Mich App 714, 719-720; 895 NW2d 577 (2016) (quotation marks and citation omitted).

-2-

Here, KE testified that, when she was 16 years old, Debandt (1) digitally penetrated her vagina; (2) engaged in cunnilingus with her; and (3) touched her breasts. The sexual penetration and the sexual contact occurred within the same criminal transaction, while KE and Debandt were alone in his home. KE testified the assaults occurred when she was Debandt's student. On appeal, Debandt argues that there was insufficient evidence to show that KE was a student under the age of 18 when the sexual penetration and sexual contact occurred. However, "[t]he victim's testimony alone can provide sufficient evidence to support a conviction," *DeLeon*, 317 Mich App at 719. He also maintains that her testimony lacked credibility and was financially motivated. But we defer to the jury's credibility determinations when reviewing a claim of insufficient evidence. *Unger*, 278 Mich App at 222. Accordingly, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to support Debandt's convictions of CSC III and CSC IV.

Further, there was sufficient evidence to support Debandt's convictions of disseminating sexually explicit matter to a minor. The elements are that the defendant knowingly disseminated to a minor sexually explicit visual or verbal material that is harmful to minors; (2) he was aware of the material's sexually explicit character and content; and (3) he was either aware the person to whom the dissemination is made is under 18 years of age, or recklessly disregarded a substantial risk the person to whom the dissemination was made was under 18 years of age. MCL 722.675. Photographs and videos depicting "nudity, sexual excitement, [or] erotic fondling" are included within the definition of "sexually explicit visual material." MCL 722.673(i); see also MCL 722.673(f) (defining "sexually explicit matter" to include "sexually explicit visual material."). Dissemination includes giving, showing, or exhibiting such materials. MCL 722.671(b).

Here, VL estimated Debandt sent between 100 to 200 explicit photographs to her when she was between the ages of 16 and 17 years old. At least some of the photographs were of Debandt's penis. Debandt also sent VL explicit videos, which included at least one video which depicted him ejaculating. VL saved some of the videos and photographs, and the materials were turned over to law enforcement. Some of the photographs and videos that Debandt sent to VL were admitted into evidence and published to the jury. See *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018) (holding photographs may be used to corroborate the testimony of a witness). Debandt admitted the photographs admitted at trial depicted his penis and that he sent them to VL. On appeal, he contends that she was over the age of 18 when he did so and that her testimony to the contrary lacks credibility. He also suggests that her testimony was financially motivated. We must, however, defer to the jury's decision to credit VL's testimony that she was under 18 when Debandt gave her explicit photoshop and videos. See *Unger*, 278 Mich App at 222. Viewing the evidence in a light most favorable to the prosecution, there is sufficient evidence to support Debandt's convictions of disseminating sexually explicit matter to a minor.

III. SENTENCING

A. STANDARD OF REVIEW

Debandt argues the trial court's outside-the-guidelines sentence was unreasonable and disproportionate and that his CSC III sentences constitute cruel and/or unusual punishment. We review Debandt's outside-the-guidelines sentence "for reasonableness." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). We review "the reasonableness of a sentence for an

abuse of the trial court's discretion." *Id*. "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Because Debandt's constitutional claim was not raised in the trial court, we review it for plain error affecting his substantial rights. See *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021).

B. ANALYSIS

1. REASONABLENESS

A trial court must generally consider the legislative sentencing guidelines when issuing a sentence. *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017). The factors that are relevant to determining whether an outside-the-guidelines sentence is proportionate include "whether the guidelines accurately reflect the seriousness of the crime" and factors that are not considered or that are inadequately considered by the guidelines. *Id*. at 525. Factors that are not considered by the guidelines include "the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015). The court may, but is not required to, "expressly or explicitly consider mitigating factors at sentencing." *People v Barnes*, 332 Mich App 494, 507; 957 NW2d 62 (2020). Further, the four basic sentencing considerations are: "(1) reformation of the offender; (2) protection of society; (3) disciplining of the wrongdoer; and (4) deterrence of others from committing like offenses." *People v Boykin*, 510 Mich 171, 188; 987 NW2d 58 (2022) (quotation marks and citation omitted).

Here, the recommended minimum sentencing range for the CSC III convictions was 57 to 95 months' imprisonment. The court, however, imposed an outside-the-guidelines sentence of 10 to 15 years. On appeal, Debandt does not challenge any particular aspect of the court's reasons for imposing such a sentence. Rather, he argues that his sentences are unreasonable and violate the principle of proportionality because, once again, KE and VL's testimony lacked credibility, the evidence supporting his convictions was deficient, and his "life history" weighed against the sentence imposed. The credibility of the witnesses, however, was determined by the jury when it chose to credit their testimony. Moreover, as explained above, there was sufficient evidence to support the convictions against Debandt. Finally, the court did, in fact, consider Debandt's life history, but did not find that it mitigated against an outside-the-sentence guidelines. Instead, it determined that Debandt would pose a real and ongoing threat to the community if allowed to communicate with or "access" teenage girls again. The court considered that

> [t]he intention of the sentence is to restore a sense of security and trust to the victims and to the community at large. To serve the goals of protection of society, punishment for wrongdoing, programming that's available in the Michigan Department of Corrections for rehabilitation, and deterrence.

-4-

In doing so, the trial court engaged in a lengthy discussion of its reasoning why the guidelines did not adequately account for Debandt's predatory conduct and why a minimum sentence of 10 years' imprisonment for his CSC III convictions "is proportionate to the seriousness of the conduct."

The court cited the devasting impact Debandt's conduct had on KE and VL, noting that he had preyed upon them during their formative years, leading to severe trauma. At trial, KE testified that Debandt engaged in digital penetration and cunnilingus with her for the first time when she was 16 years old. During the first assaults, KE felt "paralyzed" and was "dissociating" to the point it felt like she was not in her body. She believed that she did not "have control over anything." When the allegations against Debandt were made public, KE was forced to "process" the situation and felt "stuck in her life." She described the court proceedings as "probably one of the worst things [she would] ever do." KE's boyfriend described her as being in "shock" and "very emotional," and he testified that she would have nightmares related to Debandt, and that she was in therapy multiple times per week. He added that the intimacy of their relations was negatively impacted by Debandt's prior abuse of KE. Additionally, when making her victim impact statement, KE expressed an array of emotions, and the psychological impact of the sentencing offenses on her was evident. The court found that "[t]he way that [KE] will experience and process sex and relationship, love and relationship, is—has [Debandt's] stamp on it. . . ." As a result, KE would "be dealing with [it] forever in [her] relationships."

The trial court noted the multitude of opportunities Debandt, who "knew better" and was in a position of authority, had to "stop" and "interrupt" his predatory conduct. Instead, he continued on with "layers of decisions" that led to "more pain in a courtroom than there ever should be." In doing so, Debandt inflicted "a forever harm."

The trial court found the sentencing guidelines did not adequately account for the seriousness of the Debandt conduct. The court noted how "particularly vulnerable" KE and VL were, that Debandt chose to exploit them, and that they were already struggling when he selected them for his predations. Debandt was more than just a teacher because he was heavily involved in the theater and music program. As a result, if a student was interested in music and theater, the student was essentially forced to interact with him. The trial court also recognized that the abuse occurred over a lengthy period of time, that there was a "dramatic age difference" between Debandt and the "high school girls," and that Debandt had "violated a sacred position of trust."[1]

In light of the record in this case, we conclude that the sentence imposed by the trial court is reasonable and does not violate the principle of proportionality.

---

[1] Although offense variables (OVs) 4 and 10 address psychological injury to a victim and an offender's exploitation of a vulnerable victim, see MCL 777.34(1) and MCL 777.40(1), the court found that the guidelines did not adequately account for Debandt's conduct and the impact it had upon his victims. We discern no error in that determination.

## 2. CRUEL AND/OR UNUSUAL PUNISHMENT

Debandt next argues that his minimum sentences for the CSC III convictions were not proportionate and therefore violate Const 1963, art 1, § 16, which prohibits cruel *or* unusual punishment. Const 1963, art 1, § 16.

> To determine whether a punishment is cruel or unusual, courts assess whether it is "unjustifiably disproportionate" to the offense committed by considering four factors: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. [*People v Lymon*, 342 Mich App 46, 82; 993 NW2d 24 (2022), vacated in part on other grounds ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 164685).]

"[T]he dominant test is the proportionality question, which is whether the punishment is so excessive that it is completely unsuitable to the crime." *People v Hallak*, 310 Mich App 555; 873 NW2d 811 (2015) (quotation marks and citation omitted), rev'd in part on other grounds 499 Mich 879 (2016). "[T]he *constitutional* concept of 'proportionality' under Const 1963, art 1, § 16 is distinct from the nonconstitutional 'principle of proportionality' discussed in [*Milbourn*, 435 Mich at 650], although the concepts share common roots." *People v Bullock*, 440 Mich 15, 34 n 17; 485 NW2d 866 (1992).

Debandt first argues his CSC III sentences constitute cruel or unusual punishment because his convictions were based on insufficient evidence. "If the evidence was not legally sufficient, however, the remedy would be to vacate [the defendant's] conviction[s]," not his sentences. See *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Regardless, there was sufficient evidence to support Debandt's convictions.

Furthermore, the punishment was not "unjustifiably disproportionate" to the offenses when comparing the harshness of the penalty to the gravity of the offenses. See *Lymon*, 342 Mich App at 82. When Debandt committed the sexual assaults, KE was 16 years old, and Debandt was 16 years and 11 months her elder. He was her trusted teacher and knew that she was struggling with her home life. KE was impacted by these crimes well into her adulthood. Debandt appears to argue that his work history and lack of criminal history before he was convicted of the CSC III crimes rendered his sentences disproportionate. However, the trial court took Debandt's lack of criminal history into consideration when assessing points to the prior record variables (PRVs). See *People v Peltola*, 489 Mich 174, 187; 803 NW2d 140 (2011). The trial court also considered Debandt's statements at sentencing and the PSIR, which referenced his positive qualities. On this record, the sentences were not cruel or unusual. Rather, the CSC III sentences are proportionate, and Debandt cannot establish plain error affecting his substantial rights.

Debandt also argues his CSC III sentences violate the United States Constitution, which forbids cruel and unusual punishment. US Const, Am VIII. However, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks

and citation omitted). Because Debandt's CSC III sentences do not constitute cruel or unusual punishment under the Michigan Constitution's broader protection, they are not cruel and unusual punishment under the United States Constitution's narrower protection. See *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000). Debandt is not entitled to resentencing.

## IV. STANDARD 4 BRIEF

In a supplemental brief filed pursuant to Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004), Debandt raises a number of additional arguments, which we address in turn.

## A. MOTION TO SEVER CHARGES

Debandt argues the trial court abused its discretion by denying his motion to sever the CSC charges and the dissemination of sexually explicit matter to a minor charge. A trial court's decision on a motion to sever charges is reviewed for an abuse of discretion. *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997).

"MCR 6.120(A) permits a prosecutor to charge a single defendant with two or more offenses, or to consolidate two or more informations against a single defendant for a single trial." *People v Thurmond*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 9 (footnote omitted). "Under MCR 6.120(C), a trial court 'must sever for separate trials offenses that are not related as defined in subrule (B)(1).' " *Id*. at ___; slip op at 9. "Offenses are 'related' if they comprise either 'the same conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.' " *People v Williams*, 483 Mich 226, 233; 769 NW2d 605 (2009), quoting MCR 6.120(B)(1) and (2). "A trial court generally is not required to sever charges that all stem from a series of connected acts." *Thurmond*, ___ Mich App at ___; slip op at 9.

All five counts against Debandt involved a series of connected acts, amounting to parts of a single scheme or plan. For example, VL and KE testified, when they were high school students and Debandt was their teacher, he began to form inappropriate relationships with them. Debandt's perceived kindness progressed into flirtation and then inappropriate sexual relationships. KE and VL had issues in their home lives and were eager to receive the attention of an adult. They were vulnerable to his tactics, and he exploited his personal relationships of trust and authority with KE and VL. In each case, Debandt used text messages and messaging applications to communicate with KE and VL. The relationships continued after VL and KE were no longer Debandt's students and reached the age of 18 because they were emotionally attached to him. In sum, all the charges against Debandt "were related because they involved a series of connected acts constituting parts of a single scheme or plan." See *id*.

Additionally, the facts of this matter were not complex, and there was little potential for confusion. See *People v Gaines*, 306 Mich App 289, 305; 856 NW2d 222 (2014). Rather, the pertinent issues were when Debandt's criminal acts occurred. Joinder also offered convenience for the witnesses, including the victims and the other-acts witnesses. See *id*. Finally, Debandt's motion to sever was not timely filed; he did not move to sever until 18 months after his arraignment in the trial court and 15 days before trial.

For the foregoing reasons, the court did not abuse its discretion by denying Debandt's motion to sever.

## B. ADMISSION OF OTHER-ACTS EVIDENCE

Debandt next argues that his constitutional rights to due process and a fair trial were violated by the trial court's admission of the other-acts evidence under MCL 768.27b. This Court "reviews for an abuse of discretion a circuit court's decision to admit or exclude evidence." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012).

Under MCL 768.27b "trial courts have discretion to admit relevant evidence of other [sexual] assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011) (quotation marks and citation omitted). Under MCL 768.27b(4)(d), "[e]vidence of an act occurring more than 10 years before the charged offense" is inadmissible unless admission of the evidence "is in the interest of justice." See MCL 768.27b(4).

Debandt argues that MM's testimony was inadmissible under MCL 768.27b(4) because (1) the alleged acts occurred more than 10 years before the charges stemming from his dissemination of sexually explicit matter to a minor, i.e., the offenses relating to VL. We disagree because the crimes relating to VL are not relevant under MCL 768.27b's plain language. MCL 768.27b(1) states that other-acts evidence is admissible "in a criminal action in which the defendant is accused of an offense involving . . . sexual assault. . . ." The crime of dissemination of sexually explicit matter to a minor is not an assaultive crime, and it is not defined as a "sexual assault" for purposes of MCL 768.27b. Instead, CSC III and CSC IV are offenses involving sexual assault. See MCL 768.27b(6)(c). Accordingly, the question is whether the crimes relating to KE occurred within the 10-year time frame, which they did. As noted by the prosecution, nothing in MCL 768.27b requires *all* of the charges in the criminal action to constitute a crime of sexual assault, or domestic violence. It merely requires a criminal action, in which a defendant is accused of "an offense" involving domestic violence or sexual assault. See MCL 768.27b.

Debandt next argues that the evidence of the incidents involving MM and EF should have been excluded under MRE 401, MRE 402, and MRE 403. "Generally, relevant evidence is admissible," and "[r]elevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *People v Sharpe*, 502 Mich 313, 331; 918 NW2d 504 (2018), citing MRE 402, quoting MRE 401. Debandt argues the other-acts evidence concerning MM and EF lacked any probative value. Yet, "propensity evidence is logically relevant because [a] person who has committed an offense may be more likely to commit that or another offense than a person who has not committed that or any other offense." *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 7 (alterations in original; quotation marks and citation omitted).

The factual circumstances of the incidents involving MM and EF were similar to the circumstances of the charged offenses in relation to KE in a number of significant ways. In all instances, Debandt started to form inappropriate relationships with the girls when he was in a position of authority over them. He gradually earned their trust; and the girls were about the same

age when he started his grooming process. Debandt communicated excessively with each girl outside of school. Eventually, Debandt touched MM, EF, and KE in a sexual manner. He began to spend time alone with KE and MM. Eventually, when MM and KE were 16 years old, Debandt engaged in cunnilingus and digital penetration with them. MM and KE were alone with Debandt when this occurred. EF, MM, and KE believed they were in love with Debandt; and they felt emotionally connected to him. EF, MM, and KE had difficult home lives, and they considered Debandt to be their confidant. In all these cases, Debandt, who held a position of authority, preyed on vulnerable young women in a specific manner.

Given the high degree of similarity between these incidents, not only in the actual sexual assaults, but also in the surrounding circumstances and relationship dynamics, this other-acts evidence was highly probative in demonstrating Debandt had a pattern of preying on vulnerable adolescent females over whom he had a position of authority. This evidence was also highly relevant to rebut Debandt's claim he and KE only had a sexual relationship after KE graduated from high school and was older than 18 years of age. Debandt denied KE's allegations and repeatedly challenged her credibility at trial. The other-acts evidence was highly probative because KE's testimony was not corroborated by that of an eyewitness. Also, KE did not save any text messages, or other messages, from Debandt when she was a high-school student. There was also no one who could testify about the day-to-day dynamics of Debandt's relationship with KE. Indeed, it appears that KE's relationship with Debandt was a secret and that he sexually assaulted KE when they were alone in his home. In light of the credibility challenges, the lack of witnesses to the sexually assaultive conduct, and the dynamics of KE's and Debandt's relationship, the prior-acts evidence concerning MM and EF was probative to the jury's assessment of the conflicting stories advanced by KE and defendant.

For the foregoing reasons, the prior-act evidence concerning MM and EF was relevant to support KE's credibility by showing Debandt's common plan, or scheme, of selecting young female victims who were accessible to him and vulnerable because of their difficult home lives. In other words, the other-acts evidence tends to show it is more probable than not that KE is telling the truth in describing the sexual assaults by Debandt, and whether she is telling the truth has significant probative value in determining whether Debandt committed CSC III and CSC IV against KE.

Additionally, the prior-acts evidence provided the jury with a more complete picture of Debandt's history, consistent with the legislative policy underlying MCL 768.27b. See *Cameron*, 291 Mich App at 610. The prior-acts evidence demonstrates Debandt's propensity to commit sexual assault against minor females over whom he has a position of authority. Such propensity evidence is not improper under these circumstances. See *People v Rosa*, 322 Mich App 726, 732; 913 NW2d 392 (2018).

Relevant and otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. Notably, MRE 403 does not regulate evidence that is simply "prejudicial" because "[r]elevant evidence is inherently prejudicial." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (quotation marks and citation omitted). Rather, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*.

With respect to whether MRE 403 barred the other-acts testimony, Debandt has not shown the evidence was unfairly prejudicial. "Propensity evidence is prejudicial by nature. . . ." *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012). Evidence that is admissible for a proper purpose is "not rendered inadmissible [under MRE 403] merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime." *People v Head*, 323 Mich App 526, 541; 917 NW2d 752 (2018) (quotation marks and citation omitted). As already explained, the evidence was highly probative. This is not an instance where "there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 618-619; 790 NW2d 607 (2010) (quotation marks and citation omitted). Moreover, the evidence was not unfairly prejudicial because the evidence's propensity inferences weigh in favor of the evidence's probative value, not its prejudicial effect. See *Berklund*, ___ Mich App at ___; slip op at 10-11.

There is no indication that the other-acts evidence concerning EF or MM injected extraneous conditions designed to arise bias, sympathy, or shock among the jurors. See *Cameron*, 291 Mich App at 611. There is also no indication the evidence stirred such passion in the jury as to "divert the jury from rational consideration of [defendant's] guilt or innocence of the charged offenses." *Id*. at 611-612. To the extent any danger of unfair prejudice persisted, the trial court minimized the danger by instructing the jury on the proper use of the other-acts evidence. Moreover, the trial court instructed the jury that it "must consider each of the crimes separately," and further it "may find the defendant guilty of all or any combination of these crimes or not guilty." These instructions lessened any danger of unfair prejudice because jurors are presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). See also *Berklund*, ___ Mich App at ___; slip op at 11.

Overall, the evidence was admissible under MCL 768.27b, and the trial court did not abuse its discretion by admitting it into evidence. As a result, Debandt cannot establish a constitutional violation in relation to the other-acts evidence.

## C. PERJURED TESTIMONY

Next Debandt contends that he was deprived of his constitutional right to a fair trial because the prosecution presented perjured testimony at trial. Because this issue was not raised at trial, we review it for plain error affecting Debandt's substantial rights. See *Burkett*, 337 Mich App at 635.

"It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "[T]he prosecution has an affirmative duty to correct false testimony. . . ." *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015). "The responsibility does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Id*. (quotation marks and citation omitted).

Debandt essentially argues that the prosecutor allowed EF and KE to lie on the stand. To support this argument, he highlights inconsistencies in their testimony and notes that they were impeached. However, the inconsistencies do not necessarily mean that their testimony was false. Indeed, KE was 27 years old at the time of trial, and EF was 23 years old at the time of trial. Both witnesses were tasked with recalling specific timelines and events that occurred when they were

-10-

high school students. They were confident Debandt sexually assaulted them when they were his students and while they were under 18 years of age.

Debandt argues that attempts to prosecute him in Wayne County in relation to crimes he allegedly committed against KE and EF were unsuccessful. However, there is no evidence to support that KE or EF were the complaining witnesses in cases in Wayne County. There is also no evidence KE and EF lied in relation to those proceedings and then lied at the instant trial. Because Debandt has failed to establish that the prosecutor knowingly presented perjured testimony, he cannot establish plain error. See *Aceval*, 282 Mich App at 389.

Finally, because Debandt has not identified any errors, his cumulative error argument necessarily fails. See *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman